■    EXIMETALS CORPORATION, Plaintiff, v PINHEIRO GUIMARAES, S. A., et al., Defendants, and BANCO DO NORDESTE DO BRASIL, S. A., et al., Defendants and Third-Party Plaintiffs-Appellants. ISRAEL DISCOUNT BANK, Respondent; SOLCOOR, INCORPORATED, et al., Third-Party Defendants. EXIMETALS CORPORATION, Plaintiff, v PINHEIRO GUIMARAES, S. A., et al., Defendants, and BANK LEUMI TRUST COMPANY OF NEW YORK, Appellant. BANCO DO NORDESTE DO BRASIL, S. A., Respondent and Third-Party Plaintiff, v SOLCOOR, INCORPORATED, et al., Third-Party Defendants.—Order, Supreme Court, New York County, entered June 29, 1979, granting motion of defendant Israel Discount Bank for summary judgment dismissing the cross claims of defendants-appellants Banco do Nordeste do Brasil, S. A., and Banco Mercantil do Brasil, is unanimously affirmed, with costs to respondent Israel Discount Bank. Order, Supreme Court, New York County, entered June 29, 1979, denying motion of Bank Leumi Trust Company of New York for summary judgment, is unanimously reversed, on the law, and said motion for summary judgment is granted and the cross claim of Banco do Nordeste do Brasil, S. A., against Bank Leumi Trust Company of New York is dismissed, on the merits, with costs to appellant Bank Leumi Trust Company of New York. These motions for summary judgment in companion cases present the question of liability on letters of credit issued respectively by Israel Discount Bank and Bank Leumi Trust Company of New York where the letters of credit were not honored for the reason that the documents presented to the issuing banks do not meet the requirements of the letters of credit. We hold that the issuing banks are not liable on the letters of credit. Both letters of credit were issued to finance an import transaction involving some steel flanges being purchased apparently by Eximetals Corporation, a New York corporation, from defendant Pinheiro Guimaraes, S. A., a Brazilian corporation. Pinheiro Guimaraes apparently negotiated these letters of credit with Banco do Nordeste do Brasile, S. A., and Banco Mercantil do Brasil (Brazilian banks). In each case the letter of credit called for payment on presentation of certain documents including an "inspection certificate verified by and countersigned by Mr. Gang," apparently the president of plaintiff corporation. The Israel Discount Bank's letter of credit required that the inspection certificate "must now certify that the material shipped is 7124 units Ribbet Flange in accordance with sample and buyers drawing No. 17865 @$210.00 each." The document presented as an inspection certificate omitted completely the phrase "Ribbet Flange in accordance with sample and buyers drawing No. 17865," but did say "as per shippers proforma invoice of November 9th, 1977." Israel Discount Bank refused to pay on the letter of credit because of this omission. Thereafter the Brazilian banks presented a *pro forma* invoice which did include the omitted phrase. In our view this

was not a sufficient compliance with the requirements of the letter of credit. The documents presented against the letter of credit must comply precisely with the requirements of the letter of credit. The New York Court of Appeals thus stated the rule: "We have heretofore held that these letters of credit are to be strictly complied with, which means that the papers, documents and shipping descriptions must be followed as stated in the letter. There is no discretion in the bank or trust company to waive any of these requirements." (Anglo-South Amer. Trust Co. v Uhe, 261 NY 150, 156-157.) Again in Courtaulds North Amer. v North Carolina Nat. Bank (528 F2d 802, 806), the court said: "No substitution and no equivalent, through interpretation or logic, will serve. Harfield, Bank Credits and Acceptances (5th Ed. 1974), at p. 73, commends and quotes aptly from an English case: 'There is no room for documents which are almost the same, or which will do just as well.' Equitable Trust Co. of N. Y. v. Dawson Partners, Ltd., 27 Lloyd's List Law Rpts. 49, 52 (1926). Although no pertinent North Carolina decision has been laid before us, in many cases elsewhere, especially in New York, we find the tenet of Harfield to be unshaken." Here the letter of credit stated that the inspection certificate "must now certify" that the goods are "Ribbet Flange in accordance with sample and buyers drawing No. 17865." It did not do so. Nor does the reference to a later supplied pro forma invoice meet this requirement. The bank's function in the comparison of documents with the letter of credit is quite ministerial. Further in this case, the letter of credit expressly stipulated that the inspection certificate be countersigned by Mr. Gang. There is nothing signed or countersigned by Mr. Gang which says that the pro forma invoice subsequently furnished by the Brazilian banks, presumably obtained from the sellers, was in fact the pro forma invoice to which Mr. Gang referred in the purported inspection certificate. While a similar objection is urged with respect to the Bank Leumi letter of credit, we think that as to this particular objection there may well be a question of fact whether the Bank Leumi waived the objection by making its original objection on other grounds and not on this ground. However, the Bank Leumi did promptly object on the ground that the inspection certificate was "not signed although countersigned," and shortly amplified this by saying that the certificate was "not signed by issuer." We think this was a valid objection. The requirement that the inspection certificate be "countersigned" by Mr. Gang means that his signature should be added to someone else's signature, presumably the person making the inspection. Thus Webster's Third New International Dictionary (p 520 [1971 ed]) defines the verb "countersign" as meaning "to add one's signature to (a document) after another's to attest authenticity". We do not think that the fact that the certificate was on the letterhead of a "Hepco Trading Co." means that Hepco was signing or certifying to anything. Indeed, the purported inspection certificate states that the specifications and quantities are verified and certified "by me." And the only signature is the purported signature of Mr. Gang. Nor may the defect be ignored because of the fact that Mr. Gang was the president of the buyer corporation. The obligation of the letter of credit is the obligation of the Bank Leumi and its terms are spelled out in the letter of credit. Those terms may not be varied except by consent of the issuer bank, nor is it for the bank to decide in this case whether one signature is as good as two. For the purpose of this motion, we have of course assumed that the signature of Mr. Gang is not a forgery although Mr. Gang claims it is. Furthermore, the charges of fraud made by the Brazilian banks against the importer and exporter do not make enforcible a letter of credit which is not otherwise

enforcible. In some cases, fraud may be a reason why a letter of credit otherwise enforcible should not be enforced. But in general, fraud does not give rise to a cause of action on a letter of credit. There is no showing of any fact which should estop the banks from making any defenses they have to the letters of credit. Concur—Lane, J. P., Lupiano, Silverman and Ross, JJ.