Jack HAGER, Plaintiff and Appellant,

v.

The DEVILS LAKE PUBLIC SCHOOL DISTRICT, a public corporation, Defendant and Appellee.

Civ. No. 9813.

Supreme Court of North Dakota.

Jan. 23, 1981.

Degnan, McElroy, Lamb, Camrud, Maddock & Olson, Grand Forks, for plaintiff and appellant; argued by Gerald J. Haga, Grand Forks.

Traynor & Rutten, Devils Lake, for defendant and appellee; argued by Thomas Rutten, Devils Lake.

SAND, Justice.

This is an appeal by the plaintiff, Jack Hager [Hager], from a judgment entered in his favor in the amount of $1,149.00, plus interest.

On 13 Mar 1973 the Director of Institutions for the benefit of the North Dakota School for the Deaf of the State of North Dakota [State] and Hager entered into a written lease whereby Hager was to rent approximately 48.26 acres of land in Ramsey County, North Dakota, owned by the State. The lease was to last from 15 Mar 1973 until 31 Dec 1975 with annual rent payments of $528.00 payable on 15 Mar 1973; 15 Feb 1974; and 15 Feb 1975.

The lease provided in part that:

"The first party [State] hereby expressly reserves the right to sell said premises, and the party of the second part [Hager] does hereby agree that in the event of the

sale of said premises that he will vacate said premises forthwith providing a crop has not been sowed, however, if a crop has been sowed prior to sale, second party shall have the right to harvest and remove the growing crop from said premises prior to vacating same."

On 7 Jan 1975 House Bill No. 1537 was introduced into the North Dakota Legislature. It was passed as an emergency Act and was approved and became effective 25 Mar 1975. This Bill authorized the Director of Institutions for the State of North Dakota to sell approximately 30.2 acres of the land leased by Hager to the Devils Lake School District [school district]. The Bill authorized the Director of Institutions to have the land appraised and to negotiate the sale of the land at an amount not less than the appraised value set by the Board of University and School Lands.

Two appraisals were done on the land. The County Board appraised the land at $12,080.00, and the Land Department appraised the land at $18,120.00. On 24 Apr 1975 the Board of University and School Lands recommended to the Director of Institutions that there be an appraisal of $15,-100.00 on the land.

On 25 Apr 1975 the school district submitted a written bid of $15,100.00 on the land and also made a payment of $500.00. On the same day a written agreement was entered into whereby the Director of Institutions acting on behalf of the State of North Dakota agreed to accept the bid by the school district.

The State executed a quitclaim deed, dated 5 May 1975, to the school district. The quitclaim deed bearing the signature of the Governor and the Attorney General was notarized on 26 June 1975 and recorded in the Ramsey County Register of Deeds' office on 23 July 1975.

The attorney for the school district, John T. Traynor, wrote a letter dated 30 Apr 1975 to Hager which informed him that the school district had acquired some of the property that he had leased from the State. A subsequent letter, dated 20 May 1975, from Traynor to Hager pointed out the provision in the lease requiring Hager, in the event of a sale, to vacate the premises providing a crop had not been sowed.

The substance of a conversation between Hager and a representative of the school district, Duane Olson, during the early part of May 1975 is in dispute as to whether or not Hager was informed that all or merely a portion of the 48.26 acres had been purchased by the school. Hager seeded 12 of the 18 acres not acquired by the school district on 2 June 1975 and asserted that the remaining 6 acres could not be seeded because of sloughs and a dirt pile resulting from construction on the land purchased by the school district. Hager testified that he would have ordinarily seeded on April 25th but because of the amount of moisture received that spring, he would have seeded the entire acreage by May 10th if there had been no delays arising out of uncertainties attributed to the sale.

Hager brought this action and alleged that the school district wrongfully deprived him from farming the entire 48.26 acres by misrepresenting that the land was sold on or before 30 Apr 1975 when, as he alleged, the sale did not occur until at least when the quitclaim deed was notarized on 26 June 1975 and possibly as late as when the quitclaim deed was recorded in the office of the Ramsey County Register of Deeds on 23 July 1975. Hager also alleged that the school district, by taking possession of the 30.2 acres, did wrongfully damage his remaining leasehold.

The district court, Judge Olson,[1] issued a memorandum opinion dated 7 Jan 1980 in

1. This action was tried before Judge Heen on 22 Feb 1979, who took the matter under advisement and requested briefs from both parties. However, during this interim period, counsel for the defendant interjected a document which had not been made part of the record during the trial. Because of this, Judge Heen withdrew from the case, and Judge Everett Nels Olson was appointed to take over the case. No further evidence was introduced and Judge Olson decided the case upon a transcript of the trial, along with depositions introduced at the trial.

which Hager was awarded $1,149.00 in damages for the 6 acres not farmed by him. Pursuant to Hager's motion for reconsideration, the court allowed interest at 6% per annum on the $1,149.00 from 23 Aug 1975. Judgment was entered on 20 May 1980, and Hager appealed from that judgment to this Court.

The first issue Hager raises on appeal concerns the proper construction of the term "sale" as used in the lease. A resolution of this issue is necessary to determine the date of the sale of the 30.2 acres and the termination of the lease.

The school district asserts the agreement to sell on 25 Apr 1975 constituted a "sale" and was the date of the sale. Therefore, the lease was terminated prior to when a crop was, or could have been, sown by Hager.

Hager asserts the sale could not occur until the delivery of a properly executed deed from the State to the school district because the term "sale" contemplates a situation in which a completed sale has occurred and title to the property has passed. Thus, Hager contends that the land was sold after a crop could have been sown and, therefore, he was wrongfully prevented from farming the entire leased premises and was entitled to damages for the lost profits on the 30.2 acres.

■ The construction of a written contract to determine its legal effect is always a question of law for the court to decide. *Olson v. Peterson*, 288 N.W.2d 294 (N.D. 1980).

The district court made the following conclusion of law concerning the termination of the lease:

"1. Jack Hager's lease with the State of North Dakota was terminated with respect to 30.2 acres of the leased premises by the sale of said premises to the Defendant Devils Lake School District pursuant to the binding sales agreement of April 25, 1975."

■ On appeal to this Court, conclusions of law are fully reviewable. *Northwestern Bell Telephone Co. v. Board of Commissioners of Fargo*, 211 N.W.2d 399 (N.D.1973).

■ The construction of terms in a lease is governed by the rules of construction of a contract. *Olson v. Peterson, supra.*

In interpreting a written contract the intention of the parties is to be determined from the writing alone, if possible. Section 9–07–04, NDCC. The circumstances under which a contract is made and the matter to which it relates may be used to explain a contract. Section 9–07–12, NDCC.

■ We also note that the requisites of a sale necessary to terminate a lease have been described as follows:

"Under a provision in a lease for its termination on a sale of the premises, the character of sale necessary to render the provision operative depends on a proper construction of the lease as a whole, viewed in the light of the intention of the parties. A completed sale which leaves the lessor with no further claim to, or interest in, the premises will suffice to terminate the lease. Unless the contract when properly construed provides otherwise the sale need not have been finally consummated, or the title actually transferred, in order to terminate or permit termination of the lease." 51C C.J.S. *Landlord & Tenant*, § 93(3).

Thus, a sale terminating a lease may be either by a conveyance of title or, in some circumstances, without an actual or consummated transfer of title. *West v. Brenner*, 88 Idaho 44, 396 P.2d 115 (1964). See also 49 Am.Jur.2d *Landlord and Tenant*, § 1004.

■ In this instance the term "sale" was not defined or given a special meaning in the lease. The term "sale" is not a word of fixed and invariable meaning. It may be given a narrow or broad meaning as may be indicated by the context or surrounding circumstances in which it is used. The circumstances of this lease, and the subject matter of the whole lease, and this particular clause, leads us to conclude that its purpose was to provide notice to Hager of a sale so that a crop would not be planted after the sale. Additionally, we note that the agree-

ment to sell on 25 Apr 1975 was a binding agreement on the State to execute a conveyance in form sufficient to pass the title of the property. See § 47–10–02, NDCC. With this in mind, we conclude that the technical aspect of a delivery of a deed and a recording of the instrument were not necessary to effectuate a sale as contemplated by the parties. Therefore, Hager was not entitled to farm the 30.2 acres in 1975 because the land was sold before the crop was, or could have been, sown.

The next issue raised by Hager deals with three related aspects of the award of damages by the district court.

First, Hager asserts that the district court erred in refusing to allow the recovery of summer-fallowing expenses for 1974 in the amount of $35.00 per acre for the entire 48 acres. Hager points to the provision of the lease that required him not to "do or permit to be done anything that shall lessen the value of said premises." Thus, Hager asserts that this provision required him to farm the land in a "husbandly manner" which meant summer-fallowing the land in 1974 and not planting a crop in that year. Therefore, Hager asserts that he should have recovered the cost for summer-fallowing for 1974.

The district court's finding of fact with respect to this question provides as follows:

"4. No evidence was presented as to the amount of summer fallow on the land at the commencement of the lease term. However, the entire 48.26 acres were crop in 1973 and were summer fallowed in 1974. The lease agreement made no provision as to compensation for summer fallow, and no evidence was presented as to the custom in the vicinity relative to compensation for summer fallow in existence at the termination of the lease."

We have previously held that custom and usage may be given effect as part of a written contract where the agreement is silent or ambiguous on a point, and where there is a well-established custom concerning a subject so that the parties may be presumed to have acted with reference to the custom. *Tong v. Borstad*, 231 N.W.2d 795 (N.D.1975).

The custom or usage must be proved as any other fact. *Peterson v. McCarney*, 254 N.W.2d 438 (N.D.1977). Whether or not a custom or usage exists is a question of fact.

We have previously said that Rule 52(a), North Dakota Rules of Civil Procedure, does not apply where the evidence before the trial court is entirely documentary in nature because the demeanor and credibility of the witness are not involved and we have before us precisely the same written evidence as the trial court had before it. *Krohnke v. Lemer*, 300 N.W.2d 246 (N.D.1980); *Olson v. Peterson, supra.*

Our review of the record reflects that there were no provisions of the lease specifying payment for summer-fallowing. Furthermore, there was no evidence presented to indicate the custom or usage with reference to summer-fallowing or with reference to payment or reimbursement for the summer-fallowing. Therefore, we conclude that the district court did not err in refusing to allow recovery for the summer-fallowing done in 1974.

The next two points raised by Hager with regard to damages relate to the 6 acres not sold to the school district and not farmed by Hager. Hager asserts that the district court erred in computing its award of damages on this parcel because it used a cost of $75.00 per acre rather than a cost of $40.00 per acre. Thus, Hager asserts that the trial court erred by deducting an additional $35.00 per acre for these 6 acres from Hager's gross revenue.

Hager testified as to two cost figures computed on a cost-per-acre basis of $40.00 and $75.00. There was no foundation or indication as to how either figure was computed. Hager testified that the $40.00 per acre was the average cost "over all the farm put together." Seventy-five dollars per acre was the actual cost to Hager to farm the 12 acres. This figure was higher than the average cost for all the land farmed by Hager because the June planting

required an additional trip of 37 miles to take care of the crop at a later date in the fall. There was also testimony by Hager that the sale of the 30.2 acres resulted in difficulty in farming the remaining land, thereby increasing costs. The increased cost per acre Hager encountered in farming the 12 acres was partially attributable, in one way or another, to the sale of the land to the school district. Thus, we disagree with the district court's finding of fact that the cost of production was $75.00 per acre. We conclude that the proper cost per acre should have been the $40.00 average cost per acre for the whole farm. Accordingly, the damage award should be modified to reflect an award to Hager in the sum of $1,359.00.[2]

The last point raised by Hager with regard to damages is that attorney's fees should have been awarded for at least the taking of the 6 acres because the denial of the use of those 6 acres by the school district amounted to a taking and constituted inverse condemnation. Hager's amended complaint sought attorney's fees pursuant to § 32–15–32, NDCC. The district court, in response to Hager's motion to reconsider, stated that the court's award was not based upon a theory of eminent domain, but rather that the lease was terminated.

 Attorney's fees are not recoverable in an action unless expressly authorized by law. *Kilby v. Movius Land and Loan Co.*, 55 N.D. 830, 215 N.W. 284 (1927). This Court has said that costs (which under some provisions include attorney's fees) are purely the creature of statute and can be awarded only when expressly authorized by statute. *Wallace v. Workmen's Compensation Bureau*, 70 N.D. 193, 293 N.W. 192 (1940).

The North Dakota Legislature has enacted laws providing for and authorizing the payment of attorney's fees in eminent domain cases. Section 32–15–32, NDCC.

Article II § 14 of the North Dakota Constitution also deals with eminent domain proceedings and provides, in part, as follows:

"Private property shall not be taken or damaged for public use without just compensation having been first made ..."

In *Jamestown Plumbing and Heating Co. v. City of Jamestown*, 164 N.W.2d 355, 358 (N.D.1968), we quoted the following with approval from *Donaldson v. City of Bismarck*, 71 N.D. 592, 3 N.W.2d 808, 817 (1942) [on petition for rehearing]:

"The provisions of Section 14 of the Constitution are not restricted to eminent domain proceedings. They are applicable as well where private property has been taken or damaged without the consent of the owner, and where no condemnation proceeding has been brought. It is well settled that in such case the constitutional guarantee may be invoked, and the owner may maintain an action to recover just compensation for the property taken or the damage inflicted."

 It is also well established that a tenant is an owner of property in the constitutional sense and is entitled to share in compensation in properties taken or damaged. *Arkansas State Highway Commissioner v. Streed*, 241 Ark. 950, 411 S.W.2d 17 (1967); see generally 27 Am.Jur.2d *Eminent Domain*, § 250.

 The district court entered the following finding of fact:

"12. A dirt pile and water runoff occasioned by Defendant's construction activities interfered with Plaintiff's ability to seed 6 of the 18 acres not sold."

The district court entered the following pertinent conclusion of law:

"2. That Jack Hager's damages resulting from construction activities of the Devils Lake School District are in the sum of $1,149 plus interest at 6 percent per annum from September 13, 1975, together with costs to be taxed and allowed by the Clerk of District Court."

---

**2.** The six acres would have produced 43.33 bushels per acre at $6.15 per bushel. The cost of production was set at $75.00 per acre (finding of fact by trial court) but should have been set at $40.00 per acre.

(6 x $6.15) x 43.33 = $1,598.87 or $1,599.00 – (6 x $40.00) = $1,359.00

Our review of the record leads us to agree with the district court that Hager's ability to seed the 6 acres was interfered with because of the construction by the school district. There was evidence introduced that dirt was piled on part of the 6 acres and that additional water runoff was on the land due to the construction. We believe that this evidence supports a finding that the leasehold was damaged and that there was inverse condemnation of the 6 acres by the school district as a consequence of the construction on the 30.2 acres within the concept expressed in § 14 of the North Dakota Constitution. Therefore, reasonable attorney's fees necessary to prove these damages should have been awarded pursuant to § 32–15–32, NDCC. Accordingly, we remand this case for a determination of reasonable attorney's fees based on the standard set forth in *City of Bismarck v. Thom*, 261 N.W.2d 640 (N.D.1977). The court is further directed to modify the judgment by allowing damages in the amount of $1,359.00 in place of $1,149.00. The judgment as to when the sale occurred is affirmed. Costs to be assessed in favor of the appellant.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.