The KELLY–SPRINGFIELD TIRE COMPANY, a Maryland corporation, Plaintiff and Appellee,

v.

DAKOTA NORTHWESTERN BANK, N. A., Defendant and Appellant.

DAKOTA NORTHWESTERN BANK, N. A., Third-Party Plaintiff and Appellant,

v.

Ray HOFFMAN, Third-Party Defendant and Appellant.

Civ. No. 10124.

Supreme Court of North Dakota.

July 9, 1982.

Robert P. Bennett, of the firm Kelsch, Kelsch, Bennett, Ruff & Austin, Bismarck, for plaintiff and appellee.

Lundberg, Conmy, Nodland, Lucas & Schulz, Bismarck, for third-party defendant and appellant, Ray Hoffman; appearance by Timothy D. Lervick, Bismarck; argued by Patrick A. Conmy, Bismarck.

Gregory W. Tschider, Jr., Bismarck, for defendant and appellant and third-party plaintiff and appellant, Dakota Northwestern Bank, N. A.; and by Lundberg, Conmy, Nodland, Lucas & Schulz, Bismarck; argued by Patrick A. Conmy, Bismarck.

PAULSON, Justice.

This case involves the "arcane mysteries" [1] of a letter of credit. Kelly-Springfield Tire Company [Tire Company], beneficiary of an irrevocable letter of credit is-

sued by Dakota Northwestern Bank, N. A. [Bank], brought suit against the Bank alleging that the Bank wrongfully dishonored the Tire Company's demand for payment under the letter of credit. The Bank, in turn, filed a third-party complaint against Raymond Hoffman [Hoffman], the customer at whose request the letter of credit was issued, alleging that Hoffman would be liable to the Bank in the event that the Bank was "required to pay" the Tire Company on the letter of credit. All three parties, that is, the Tire Company, the Bank, and Hoffman, moved for summary judgment.

The district court granted the Tire Company's motion for summary judgment against the Bank and granted the Bank's motion for summary judgment against Hoffman. The Bank and Hoffman appealed.[2] We reverse and remand.

In early November of 1980, Hoffman asked Michael Huelskamp, an official of the Bank, to issue a $25,000 letter of credit to the Tire Company. Hoffman testified that he asked the Bank to issue the letter of credit to insure "that a person by the name of James Mosbrucker would be able to purchase tires ... [on] a more favorable economic basis" from the Tire Company. At the time the letter of credit was issued, James Mosbrucker, Hoffman's nephew, was operating Dakota Tire Company, a retail tire sales outlet, in a building he leased from Hoffman.

The letter of credit dated November 15, 1980, authorized the Tire Company to draw on the Bank "for the account of Raymond Hoffman and James Mosbrucker up to ... the aggregate amount of $25,000" upon presentment of a draft and the following documents: (1) "commercial invoices for goods sold to Raymond Hoffman and James Mosbrucker"; and (2) the Tire Company's written statement that it has not "received payment from Raymond Hoffman and

1. T. Quinn, Uniform Commercial Code Commentary and Law Digest 5–39 (1978).

2. The judgment in favor of the Tire Company and against the Bank was entered on November 6, 1981. The judgment in favor of the Bank and against Hoffman was entered on November 12, 1981. The Bank in its notice of appeal mistakenly stated that it was appealing from the judgment of November 12, 1981. It is clear that the Bank intended to appeal from the judgment of November 6, 1981.

James Mosbrucker for a period of 30 days from the date of such invoice". The letter of credit prescribed November 15, 1981, as its expiration date.[3]

On June 3, 1981, at a meeting attended by V. W. Jones, Jr., an official of the Tire Company, Hoffman, his attorney, and Huelskamp, Mr. Jones presented Huelskamp with a sight draft for $25,000 and several invoices covering sales to Dakota Tire. The Tire Company official also presented Huelskamp with a letter dated May 29, 1981. In pertinent part, this letter stated:

"Enclosed are our invoices totaling in excess of $25,000 for tires sold to Raymond Hoffman and James Mosbrucker. This is to advise you that we have not received payment from Raymond Hoffman or James Mosbrucker for a period of more than thirty (30) days for these invoices."

The Bank determined that the Tire Company's presentment did not satisfy the terms of the letter of credit and, at the June 3, 1981, meeting, refused to honor the Tire Company's demand. The Bank's chief reason for dishonoring the draft was that the condition in the letter of credit requiring the presentment of "commercial invoices for goods sold to Raymond Hoffman and James Mosbrucker" had not been complied with by the Tire Company.[4]

■ The key issue raised in this appeal is whether or not the Tire Company's presentment complied with the terms of the letter of credit. Article 5 of the Uniform Commercial Code, which governs letters of credit, is codified in Chapter 41–05 of the North Dakota Century Code. The Uniform Commercial Code places an affirmative obligation on the issuer of an irrevocable letter of credit to "honor a draft or demand for payment which complies with the terms of the relevant credit". § 41–05–14(1), N.D. C.C. (§ 5–114(1), U.C.C.). The traditional and predominant standard for determining whether or not a presentment accords with the terms of the letter of credit is one of strict compliance.[5] *Chase Manhattan Bank v. Equibank*, 550 F.2d 882 (3d Cir. 1977); *Courtaulds North America, Inc. v. N. C. Nat. Bank*, 528 F.2d 802 (4th Cir. 1975). In order to exact performance of the issuer, the beneficiary must comply with terms of the credit precisely. "There is no room for documents which are almost the same, or which will do just as well." *Courtaulds, supra* 528 F.2d at 806, quoting from Harfield, Bank Credits and Acceptances (5th Ed. 1974) at 73, taken from the old English case of *Equitable Trust Co. of N. Y. v. Dawson Partners, Ltd.*, 27 Lloyd's List Law Rpts. 49, 52 (1926). *See generally*, J. White and R. Summers, Uniform Commercial Code (2d Ed. 1980), Chapter 18, *Letters of Credit*, at 704 et seq.

Did the documents presented by the Bank comply with the terms of the credit[6] that the draft must be accompanied by "commercial invoices for goods sold to Raymond Hoffman and James Mosbrucker"? It is undisputed that the invoices originally presented by the Tire Company covered only sales to Dakota Tire. (On July 3, 1981, after dishonor of the draft, the Tire Company presented invoices in which the words

---

**3.** There were several other conditions specified in the letter of credit including a requirement that the draft must state on its face that it was drawn under the letter of credit, and a requirement concerning the notation on the letter of credit.

**4.** The Bank sent a letter to the Tire Company on June 5, 1981, confirming the dishonor of the draft. Enclosed with the Bank's letter was a letter written by Hoffman's attorney, outlining Hoffman's objections regarding the presentment: *i.e.*, that no sales were made to Hoffman and Mosbrucker as required in the letter of credit and that the Tire Company had not presented "commercial invoices for goods sold to Raymond Hoffman and James Mosbrucker".

Despite the Tire Company's assertions to the contrary, it is evident that the Bank agreed with and adopted the heart of Hoffman's objections as its own.

**5.** We recognize that a milder standard has been applied to govern the situation when a customer sues an issuing bank for wrongful dishonor. *See Data General Corp. v. Citizens Nat. Bank*, 502 F.Supp. 776, 781 n.5 (D.Conn.1980). We leave that question for another day.

**6.** The Bank has not challenged the Tire Company's compliance with the other conditions. *See* n.3, *supra*.

"James Mosbrucker d/b/a" were typed above the words "Dakota Tire".)

The essence of the Bank's position on appeal is that the Tire Company's presentment did not comply with the terms of the letter of credit because the invoices presented were not for "goods sold to Raymond Hoffman and James Mosbrucker". In the Bank's view, the invoices should have indicated that the goods were sold to Hoffman and Mosbrucker.

The Tire Company, on the other hand, urges us to consider other documents which it submitted to the Bank, along with the letter of credit, and to hold that these documents complied with the terms of the letter of credit. Specifically, the Bank relies on (1) the invoices; (2) the Tire Company's letter dated May 29, 1981, which was presented to the Bank on June 3, 1981, and the statement in the letter that invoices "for tires sold to Raymond Hoffman and James Mosbrucker" were enclosed; and, (3) the draft presented to the Bank referring to the specific letter of credit and identifying the account of Raymond Hoffman and James Mosbrucker. The Tire Company premises its argument on several cases which have excused discrepancies between the documents submitted by the beneficiary and the letter of credit requirements, *Flagship Cruises, Ltd. v. New England Merchants Nat. Bank of Boston*, 569 F.2d 699 (1st Cir. 1978); *U. S. Industries, Inc. v. Second New Haven Bank*, 462 F.Supp. 662 (D.Conn.1978); *First Arlington Nat. Bank v. Stathis*, 90 Ill.App.3d 802, 46 Ill.Dec. 175, 413 N.E.2d 1288 (1980). *Flagship, supra*, for example, stands for the proposition that a variance between documents specified and documents submitted is not fatal if there is no possibility that the documents could mislead the paying bank to its detriment (569 F.2d at 705). *And see First Arlington Nat. Bank, supra* [documents "reasonably compliant" with terms of letter of credit]. *See also Banco Espanol de Credito v. State Street Bank and Trust Company*, 385 F.2d 230, 234 (1st Cir. 1967) ["leaven in the loaf of strict construction"].

Under the circumstances of this case, we do not believe it wise to depart from the traditional standard of strict compliance. *Insurance Co. of North America v. Heritage Bank*, 595 F.2d 171 (3d Cir. 1979); *Equibank, supra; Courtaulds, supra; Eximetals Corp. v. Guiraraes*, 73 A.D.2d 526, 422 N.Y. S.2d 684 (1979), *affirmed* 51 N.Y.2d 865, 433 N.Y.S.2d 1019, 414 N.E.2d 399 (1980). In the instant case, the Tire Company failed to submit "commercial invoices for goods sold to Raymond Hoffman and James Mosbrucker". We therefore conclude that the Bank acted properly in dishonoring the Tire Company's draft due to noncompliance with the terms of the letter of credit.

In his memorandum opinion the district court judge analyzed the issues in terms of contract law. His ruling in favor of the Tire Company is based upon his conclusion that the circumstances of the case indicate that the letter of credit is ambiguous. Inferentially, the district court found an ambiguity in the statement authorizing the Tire Company to draw on the Bank "for the account of Raymond Hoffman and James Mosbrucker" and the requirement that the Tire Company's draft be accompanied by "commercial invoices for goods sold to Raymond Hoffman and James Mosbrucker". The court reasoned that the word "and" as used in the English language is sometimes used for the disjunctive "or". The district court found that there was no genuine issue of fact with regard to the intent of the parties. The court found that "The bank intended to guarantee payment of tires sold by ... [the Tire Company] on credit to James Mosbrucker". Finding that the Tire Company "sold tires to James Mosbrucker", the district court judge concluded that "the bank is therefore liable for the unpaid balance pursuant to the letter of credit".

We disagree with the district court's decision. First, we have serious doubts as to whether or not the letter of credit is ambiguous. An ambiguity exists when good arguments can be made for either of two contrary positions as to the meaning of a term. *Thiel Industries v. Western Fire Ins. Co.*, 289 N.W.2d 786, 788

(N.D.1980). What *good* argument can be made concerning two meanings of the phrase "commercial invoices for goods sold to Raymond Hoffman and James Mosbrucker"? The better argument is that the phrase is clear and that it means exactly what it says. Assuming, *arguendo*, that extrinsic evidence was properly considered to determine the existence of a latent ambiguity, and that an ambiguity exists, we believe that the district court was in error in its resolution of the alleged ambiguity. Undisputed evidence shows that the Bank included the requirement concerning "commercial invoices for goods sold to Raymond Hoffman and James Mosbrucker" in order to protect its financial interests and the financial interests of its customer, Hoffman. The evidence reveals that the Bank was reluctant to contract with Mosbrucker alone because of its prior business experiences with him. Huelskamp's deposition indicates that the Bank would not have issued a letter of credit at Mosbrucker's request alone[7] and that Huelskamp employed the "joint name" of Hoffman and Mosbrucker "to tie the two together". Hoffman's deposition discloses that he believed that he would "receive copies of the invoices as it indicates in the Letter of Credit". In view of these circumstances, there is only one reasonable explanation for the disputed terms of the letter of credit: tires were to be sold to Hoffman and Mosbrucker and invoices for goods sold to Hoffman and Mosbrucker were to be presented with the draft.

We are not persuaded by the Tire Company's adamant arguments to the contrary. The fact that Hoffman was not in the tire business and did not expect personal delivery of the tires does not mean that a sale to both Hoffman and Mosbrucker was not intended. Such a sale could have been easily accomplished without dumping tires in Hoffman's backyard. Similarly, the fact

that Hoffman requested the letter of credit to help Mosbrucker purchase tires for his business does not render an interpretation which requires sales to Hoffman and Mosbrucker and invoices evincing these sales unreasonable. Indeed, it is the fact that Hoffman convinced a reticent bank to help his nephew that makes such an interpretation eminently reasonable. That the Bank had no account for Hoffman and Mosbrucker is irrelevant; the letter of credit refers to "the account of Hoffman and Mosbrucker" carried by the Tire Company.

■ In order to demand payment under the letter of credit the Tire Company was required to sell tires to Hoffman and Mosbrucker and to submit invoices regarding these sales to the Bank. The fact that the Tire Company sold tires to Dakota Tire or James Mosbrucker d/b/a Dakota Tire does not render our interpretation of the letter of credit absurd. We are not free to ignore the reasonable interpretation of the letter of credit because the Tire Company failed to comply with its terms.

Letters of credit ordinarily involve sophisticated parties and significant business dealings. The letter of credit herein required the Tire Company to produce documents which it prepared. It must assume the responsibility for its failure to comply with the terms of the letter of credit. The viability of a letter of credit as a commercial device depends largely upon the certainty which it provides. This certainty may well be undermined if the Bank is required to make payment despite the beneficiary's noncompliance with the terms stipulated in the letter of credit. *See Heritage Bank, supra* 595 F.2d at 176.

The judgment in favor of the Tire Company and against the Bank is reversed as is the judgment in favor of the Bank and against Hoffman. The case is remanded

---

7. We are mindful of the fact that this case is before us on appeal from motions for summary judgment and that such motions should not be granted if a genuine issue of material fact exists. Rule 56(c), North Dakota Rules of Civil Procedure. However, we do not consider the facts to be disputed in this case. It is well

established that suits concerning letters of credit are especially appropriate for determination by motions for summary judgment. *See Data General Corp. v. Citizens Nat. Bank*, 502 F.Supp. 776, 779 (D.Conn.1980), and cases cited therein.

with instructions that judgment be entered in favor of the Bank and against the Tire Company and that judgment be entered in favor of Hoffman and against the Bank.

VANDE WALLE, Acting C. J., PEDERSON and SAND, JJ., and NEUMANN, District Judge, concur.

ERICKSTAD, C. J., being disqualified did not participate, District Judge William NEUMANN sitting in his stead.