Palmer O. AASMUNDSTAD,
Plaintiff and Appellant,

v.

DICKINSON STATE COLLEGE,
Defendant and Appellee.

Civ. No. 10365.

Supreme Court of North Dakota.

Aug. 10, 1983.

---

Daniel J. Chapman (argued), of Chapman & Chapman, Bismarck, for plaintiff and appellant.

Ward M. Kirby (argued), of Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendant and appellee.

PAULSON, Justice.

Palmer O. Aasmundstad [Aasmundstad] appeals from a judgment[1] of the District Court of Stark County dismissing his complaint against Dickinson State College [College]. We reverse and remand the case for proceedings consistent with this opinion.

On May 23, 1979, Aasmundstad wrote a letter to the president of the College informing him that Aasmundstad would be retiring from his position as Director of Buildings and Planning effective July 1, 1980. Aasmundstad had been employed at the College for approximately 24 years and had served in various positions during that time.

Almost ten months later, on March 12, 1980, Dr. Albert A. Watrel, president of the College, sent Aasmundstad a letter which stated in relevant part as follows:

"Since the college will be operating on an austere budget for the fiscal year which begins July 1, 1980, we would like to fulfill our financial commitment to you before that date. For this reason, we are asking that you take all of your accumulated earned leave before your retirement on June 30, 1980. You may check with the business office to determine how many earned vacation days you have remaining and make arrangements with Mr. Binstock [director of business affairs

1. In his notice of appeal Aasmundstad stated that he appeals "from the Order for Judgment entered in this action on the 20th day of December, 1982". However, we assume that Aasmundstad appeals from the judgment, rather than from the order for judgment, because the judgment was dated and filed on December 20, 1982. We note that this is the second recent appeal in which counsel for Aasmundstad has worded his notice of appeal in this fashion. *See Sacchini v. Dickinson State College,* Civil No. 10,367, —— N.W.2d ——, —— n. 1 (N.D. 1983). An order for judgment is not an appealable order. *See* § 28–27–02, N.D.C.C.; *Storebo v. Foss,* 325 N.W.2d 223, 224 n. 1 (N.D.1982).

for the College] to take time off at your convenience."

On the next day, Aasmundstad wrote the following letter to Dr. Watrel:

"This is in reply to your letter of yesterday, March 12, 1980.

"I now have thirty days accumulated annual leave and will have twelve days accrued leave through my contract year, June 30, 1980. This is a total of forty-two days leave for which I will be paid for at the end of my contract year which ends June 30, 1980.

. . . .

"I will terminate my employment as per the contract which ends June 30, 1980."

Two weeks later, on March 27, 1980, Dr. Watrel responded in a letter as follows:

"I find your March 13, 1980 reply concerning your accrued annual leave unacceptable. . . .

"This letter is written to inform you that you will have until April 30, 1980 to make arrangements with Mr. Binstock to take the leave at your convenience. If you have not made the necessary arrangements by that date, your last official work day will be April 30, 1980, and you will be put on leave as of May 1, 1980 until all accumulate[d] days are used.

"I want to make it perfectly clear that Dickinson State has no intention of paying you for unused leave days that you do not take before June 30, 1980."

Despite Dr. Watrel's letter, Aasmundstad presented himself at his office for work on May 1, 1980, and on each business day

thereafter until May 12, 1980, when he was ordered to leave his office by Alvin Binstock, the College's director of business affairs.[2] Aasmundstad testified that after he was ordered to leave his office, he remained available by telephone to perform work for the College through June 30, 1980.

After Aasmundstad did not receive payment for his earned annual leave, he brought suit against the College. In a complaint dated March 26, 1981, Aasmundstad requested judgment against the College in the sum of $6,000, together with costs and disbursements of the action.

The trial was held before the court without a jury on December 1, 1982. During the trial, Aasmundstad claimed that he was entitled to payment in the amount of $4,476.80 for 40 days of earned annual leave.[3] Aasmundstad's employment contract with the College for the period of July 1, 1979, through June 30, 1980, was entered in evidence. The contract listed his annual salary as $29,100 and incorporated "all rules, regulations and policies of this institution and the State Board of Higher Education". A copy of the "Staff Personnel Handbook", which contains provisions relating to annual leave for administrative personnel, was also entered in evidence.

During the trial, Binstock testified that there have been employees at the College who, upon retirement, have been paid for their unused accrued leave time rather than being directed to use it. Binstock stated that "It's basically been our policy that depending on the departmental needs and

2. In a letter to Aasmundstad dated May 12, 1980, Binstock stated in relevant part as follows:

"2. Since you are on vacation until your retirement date, and have no further job related assignments, and because we are in need of your office for faculty office space assignment as soon as possible (office has been committed for occupancy by instructors as of May 19, 1980 per enclosed letter to Mr. Kussy), we are requesting that you vacate your office as soon as possible, but no later than May 16, 1980. Should you not be able to remove your possessions and clear your office by this time, our custodial staff will pack everything in boxes and place it in stor-

age where you may pick it up at your convenience. Please be informed that you are welcome to use custodial help to facilitate your packing and that you are also welcome as in the past to use the Business Office facilities for any college related correspondence you may find necessary to make after vacating your office."

3. Aasmundstad originally sought compensation for 42 days, but agreed to deduct two days for attendance at meetings. He also claimed he was entitled to the sum of $4,592.00, but later agreed to accept the College's figure of $4,476.80.

the administrator or the individual who has the leave coming, whether or not they can be spared for that period of time." He further testified that "If they cannot be, then they are taken through their contract period and they are paid for their annual leave which has been accumulated." Binstock admitted, however, that he knew of no instances, prior to Aasmundstad's retirement, in which a person was required to take their annual leave time before retirement. Dr. Watrel was also unable to relate any instances prior to Aasmundstad's retirement in which he directed a retiring employee to use his or her annual leave time. Dr. Watrel contended that under the annual leave provisions of the Staff Personnel Handbook he could require a person to take all of his or her annual leave in any particular year.

In its findings of fact, conclusions of law, and order for judgment, the trial court found that Aasmundstad's action was governed by Article VIII of the North Dakota Constitution and Chapter 15–10 of the North Dakota Century Code. Pursuant to this authority, the court concluded that the rights of any employee are governed by the contract between the employee and the institution as approved by the State Board of Higher Education and that, in the instant case, only elements of contract law were involved. The court further found that Aasmundstad was employed under the provisions of such a contract; that the contract incorporated various policies adopted by the State Board of Higher Education, including the Staff Personnel Handbook; and that, pursuant to the contract, all employees terminating their employment were entitled to be paid for all unused, earned annual leave.

The trial court also found that various parts of the annual leave provisions contained in the Staff Personnel Handbook were "vague and ambiguous and in some respects conflicting, for which reason parol evidence was received and admitted into evidence so that the Court might resolve such conflicting, vague and ambiguous provisions so as to determine what the parties meant when contracting".

In finding of fact No. 18, the court also stated:

"18. The Court finds that in prior practices at the college, the Staff Personnel Handbook has been interpreted to allow prior employees to accumulate earned but unused leave at the date of their retirement and to be compensated for such unused leave at retirement, such practices being with the consent of the college and the party terminating employment at the college. Further, the Court finds that no person retiring or terminating employment with the college prior to the employment of Aasmundstad had been compelled to take annual leave during such term of employment, and that although the requirements made of Plaintiff Aasmundstad were discriminatory because he was the first individual singled out to be compelled to use his annual leave during the course of employment, such discrimination was not unlawful, and was permissible discrimination not prohibited by contractual arrangements between the parties or by the leave provisions of the Staff Personnel Handbook."

The court thus determined that Aasmundstad had failed to meet his burden of proving that he had a contractual right to save and accumulate his earned but unused leave until his retirement and to claim compensation for such leave time at the date of termination of his contract. The court concluded that, based upon the annual leave provisions in the Staff Personnel Handbook, the College had acted within its rights. Judgment was entered on December 20, 1982, and Aasmundstad appeals.

Although the parties have posited various formulations of the issue involved in the instant case, we believe the issue can be stated as follows: whether or not the College had the contractual authority, pursuant to the annual leave provisions in the Staff Personnel Handbook, to require Aasmundstad to use up his entire accumulated annual leave time prior to his date of retirement.

The State Board of Higher Education was created to control and administer several state educational institutions, including the College at Dickinson. *See* N.D. Const. art. VIII, § 6(1)(d). The powers and authority of the State Board of Higher Education are set forth in the North Dakota Constitution and in the North Dakota Century Code. *See* N.D. Const. art. VIII, § 6; § 15–10–17, N.D.C.C. *See also Zimmerman v. Minot State College,* 198 N.W.2d 108, 112 (N.D.1972); *Posin v. State Board of Higher Education,* 86 N.W.2d 31, 35 (N.D.1957). Section 15–10–17(3), N.D.C.C., provides that the State Board of Higher Education has the power to "adopt rules, regulations, and bylaws for the government of each of such institutions and of all the departments and branches thereof". Pursuant to such authority the Board has adopted the Staff Personnel Handbook, which contains provisions relating to annual leave for administrative employees and which was admitted in evidence in the instant case.

■ We further note the general rule that an employee has no inherent right to receive accrued vacation pay upon termination of the employer-employee relationship in the absence of a statute so providing or a contractual agreement, either express or implied. *E.g., National Rifle Ass'n v. Ailes,* 428 A.2d 816, 820 (D.C.1981); *City of Webster Groves v. Institutional & Pub. Em. U.,* 524 S.W.2d 162, 167 (Mo.App.1975); *N.M. St. Labor & Indus. v. Deming Nat. Bank,* 96 N.M. 673, 634 P.2d 695, 696 (1981); *Konig v. McCoy,* 63 Misc.2d 1038, 314 N.Y.S.2d 223, 225 (N.Y.Civ.Ct.1970); *Walters v. Center Electric, Inc.,* 8 Wash.App. 322, 506 P.2d 883, 886–887 (1973).

■ We thus turn to Article 6 of the Staff Personnel Handbook, which contains the following provisions relevant to the instant case:

"6.1 Annual leave with pay is granted employees for the purpose of freeing them from their regular duties to spend time in rest and recreation. Such leave should be programmed to insure that leave is taken rather than carried forward from year to year. . . .

"6.2 Institutional operations normally govern annual leave periods. Consideration is given first to departmental needs, then to the employee's departmental seniority and finally to employee's preference. Annual leave is computed on the basis of the employee's hour/week, and months/year.

. . . . .

"6.4 All full-time, 12 month administrative and professional personnel, such as Vice Presidents, Deans, and other chief administrative officers, responsible for a major division of the institution, as designated by the President, are entitled to 24 working days annual leave each year to be taken at the convenience of the administration, with accumulation of up to 30 working days which may be carried forward each year. All employees terminating their employment with the institution, shall be paid for all earned annual leave.

. . . . .

"6.7 All permanent, 12 month, full-time employees (employees working 40 or more hours per week) may accumulate annual leave hours. Accumulated annual leave, up to 30 working days or 240 hours, shall be carried forward on January 1 each year. All employees eligible to accumulate leave must take five days of annual leave per year except for the year during which they are hired."

We have reviewed the foregoing provisions of the Staff Personnel Handbook and find, as did the trial court, that they are ambiguous in regard to the issue involved in the instant case. The College takes the position that the statements in the annual leave provisions that "leave should be programmed to insure that leave is taken rather than carried forward from year to year" [6.1]; that "Institutional operations normal-

ly govern annual leave periods" [6.2]; and that leave is "to be taken at the convenience of the administration" [6.4], gave the College the absolute right to force Aasmundstad to take his accumulated earned leave during the two months prior to his retirement date. We do not agree.

We believe the provisions relied upon by the College relate only to the scheduling of annual leave *after* the employee has made the initial decision to make use of such annual leave time.

Section 6.1 of the Staff Personnel Handbook provides in part that the purpose of annual leave with pay for employees is for "freeing them from their regular duties to spend time in rest and recreation". Section 6.4 of the Handbook clearly allows an employee to accumulate "up to 30 working days which may be carried forward each year". The annual leave provisions place no limitation on that right. It would be inconsistent with these provisions were the College allowed, as it claims, the absolute right to force an employee to use up his or her entire accrued annual leave at a time when the employee does not even desire a vacation.

A reasonable interpretation of the annual leave provisions indicates that the function of the College in scheduling an employee's taking of annual leave commences only after the employee has made the initial decision to make use of his accrued annual leave. At that point, according to section 6.2, consideration is given "first to departmental needs, then to the employee's departmental seniority and finally to employee's preference". Should the employee's request to take· his annual leave come at a time which is, for some reason, inconvenient to the College, the College may deny his request to take annual leave at that time. If this occurs, the employee then has the option of either attempting to schedule the taking of his accrued annual leave at another time during the year which would be more convenient to the College, or of foregoing his vacation and, instead, allowing the annual leave to carry over to the following year. The annual leave provisions do

not give the College the right to order an employee to make use of his entire accrued annual leave during a particular period of time. *Cf. Olson v. Rock Island Bank,* 33 Ill.App.3d 914, 339 N.E.2d 39, 40 (1975); *Trainer v. Trainer Spinning Co.,* 224 Pa. 45, 73 A. 8, 10 (1909).

We also note that the prior practices of the College indicate that the annual leave provisions in the Staff Personnel Handbook were interpreted to allow employees to accumulate earned but unused annual leave and at their retirement, to be compensated for their unused annual leave. The trial court specifically found in the instant case that "no person retiring or terminating employment with the college prior to the employment of Aasmundstad had been compelled to take annual leave during such term of employment". Our court has stated that "where an agreement is silent or ambiguous on a point, and where there is a well-established custom concerning the subject, so that the parties may be presumed to have acted with reference thereto, such custom will be given effect as a part of the agreement". *Tong v. Borstad,* 231 N.W.2d 795, 800 (N.D.1975). *See also Hager v. Devils Lake Public School Dist.,* 301 N.W.2d 630, 634 (N.D.1981); *Peterson v. McCarney,* 254 N.W.2d 438, 443–444 (N.D.1977).

Our conclusion is also supported by section 6.7 which provides in part that "All employees eligible to accumulate leave must take five days of annual leave per year except for the year during which they are hired." This section implies that an employee must take only five days of annual leave per year and that he cannot be required to take his entire accrued annual leave. We believe that under this subsection Aasmundstad was required to take five days of his annual leave during the final calendar year of his employment, *i.e.,* January 1, 1980, through June 30, 1980. His failure to use three of those days in this case resulted in their forfeiture.

▪ The College appears to argue that, in any event, Aasmundstad performed no services for the College during the final two months before his retirement became effec-

tive, and, therefore, he should not be entitled to any compensation. This claim is without merit. The record reflects that the College ordered, in no uncertain terms, that Aasmundstad vacate his office. It has been held that where it appears that the complaining party to a contract was prevented from working by the defendant, the complaining party, though he has performed no services under it, may nevertheless sue on the contract and recover its benefits. *Sheehan v. City and County of San Francisco*, 124 Cal.App.2d 769, 269 P.2d 678, 681 (1954).

Although we have concluded that the trial court erred in determining that Aasmundstad was not entitled to be compensated for his unused accumulated annual leave, we do not agree with Aasmundstad's contention that he should be entitled to an amount equal to 40 days[4] of annual leave. Section 6.4 of the Staff Personnel Handbook provides that employees may accumulate "up to 30 working days which may be carried forward each year". Section 6.7 also provides that "Accumulated annual leave, up to 30 working days ... shall be carried forward on January 1 each year". Because accumulated annual leave is determined on a calendar year basis, *i.e.,* January 1, and Aasmundstad's retirement came at the end of the fiscal year, *i.e.,* June 30, he claims he is entitled to the annual leave which accumulated during the first six months of 1980 in addition to the 30 days of accumulated annual leave which was carried forward on January 1, 1980. We do not believe it was the intent of the parties to the contract to allow Aasmundstad to accomplish on June 30, 1980, what he was specifically prohibited from accomplishing at the end of any calendar year. Accordingly, we conclude that Aasmundstad is entitled to be compensated for only 30 days of earned annual leave.

For the reasons stated in this opinion, the judgment of the district court is reversed and the case is remanded for proceedings consistent with this opinion.

ERICKSTAD, C.J., SAND, J., and GRAFF, District Judge, concur.

GRAFF, District Judge, sitting in place of VANDE WALLE, J., disqualified.

PEDERSON, Justice, concurring specially.

The trial court found as a fact that the contract in this case was ambiguous. That is a conclusion of law. *Kelly Springfield Tire Co. v. Dakota Northwestern Bank, N.A.,* 321 N.W.2d 516, 519 (N.D.1982); *In Re Estate of Johnson,* 214 N.W.2d 112, 114–115 (N.D.1973). Labels are not conclusive. *Butts Feed Lots v. Board of Cty. Commissioners,* 261 N.W.2d 667, 669 (N.D.1977).

When ambiguous contracts are being construed, relying on extrinsic evidence covering such matters as intent and custom or usage, the question is one of fact and not of law. *Oakes Farming Ass'n v. Martinson Bros.,* 318 N.W.2d 897, 908 (N.D.1982).

Most of the findings in this case are surplusage recitations of evidence. There are no findings of fact on the real fact issues: intent and custom or usage. Those findings are indispensable. The finding that Aasmundstad did not prove his case is not in accordance with Rule 52(a), NDRCivP. See *Struchynski v. Decker,* 194 N.W.2d 741 (N.D.1972).

Technically, this court should remand for the preparation of adequate findings but, in the interest of judicial economy, I concur in the reversal of the judgment.

4. As we noted earlier herein, because Aasmundstad failed to take three of the required five days of annual leave during the first six months of 1980, his claimed entitlement to accumulated annual leave should actually be 37 days.