SCARSDALE PUB. CO.-THE COLONIAL PRESS v. CARTER.

(Supreme Court, Appellate Term.   May 7, 1909.)

1. BILLS AND NOTES (§ 496*) — ACTION ON CHECK — OWNERSHIP — BURDEN OF PROOF.

One suing on a check must prove that he is the payee thereof, or the lawful holder by assignment or indorsement.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1669–1674; Dec. Dig. § 496.*]

2. BILLS AND NOTES (§ 523*)—ACTION ON CHECK—PROOF OF OWNERSHIP.

The statement of the attorney of plaintiff, suing on a check, testifying as a witness, that he would like to testify that plaintiff is the owner of the check now, followed by a statement, made when not testifying, that he would ask that the check be marked for identification, and that plaintiff is the owner thereof, does not show plaintiff's ownership of the check, essential to the maintenance of the action.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 523.*]

3. FRAUDS, STATUTE OF (§ 74*)—CONTRACTS FOR SALE AND PURCHASE OF REAL ESTATE.

A contract for the sale and purchase of building lots, binding the purchaser to pay a specified sum monthly, and binding the vendor to deliver a warranty deed for the lots, is a contract for the sale and purchase of real estate, though the contract also provides for the sale and purchase of books, which is but an incident to the transaction; and the contract must be signed by the party to be charged.

[Ed. Note.—For other cases, see Frauds, Statute of, Dec. Dig. § 74.*]

4. CORPORATIONS (§ 370*)—POWERS OF CORPORATIONS.

A corporation is an artificial creation, having no natural or inherent power, except such as its charter confers.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1515; Dec. Dig. § 370.*]

5. CORPORATIONS (§ 43*)—CORPORATE NAME.

Under Business Corporation Law (Laws 1890, p. 1168, c. 567) § 2, subd. 1, providing that the certificate of incorporation shall give the name of the proposed corporation, the name is essential to the existence of a corporation, and its name is a species of property which will be protected, and in its contracts and business dealings it must use the name given to it by the law of its existence.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 129; Dec. Dig. § 43.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. CORPORATIONS (§ 46*)—NAME.

A corporation bearing the name of the "Scarsdale Publishing Company-The Colonial Press," cannot in its contracts change its name, so as to use only the part of the name, "The Colonial Press," and a contract signed in the name of "The Colonial Press" does not bind the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 132; Dec. Dig. § 46.*]

7. BILLS AND NOTES (§ 134*) — CHECKS — CONSTRUCTION—COLLATERAL AGREEMENT.

In an action on a check between the original parties to the transaction, a contract relating to the subject-matter of the transaction in which the check was executed and delivered must be read with the check as one instrument.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 325–329½; Dec. Dig. § 134.*]

8. EVIDENCE (§ 434*)—PAROL EVIDENCE—ADMISSIBILITY—FRAUD.

A written contract, stipulating that no verbal agreements affecting the validity thereof will be recognized, may be impeached by parol proof that it was procured by fraud.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2005–2020; Dec. Dig. § 434.*]

9. FRAUD (§ 1*)—FALSE REPRESENTATIONS—ELEMENTS.

To constitute fraud by false representations, there must be a representation of an alleged existing fact, the representation must be false in fact, it must be made with intent to deceive, and the person to whom it is made must believe it.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 3, pp. 2943–2954; vol. 8, p. 7666.]

10. VENDOR AND PURCHASER (§ 33*)—FRAUDULENT REPRESENTATIONS.

Representations by a vendor of lots to an intended purchaser that the lots were situated five to ten minutes' walk from a railroad station, that the lots had some improvements, and that there were cement sidewalks, gas and water at the property, were material representations of facts, and the purchaser might rely thereon, and sue for their falsity.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 38, 40–44; Dec. Dig. § 33.*]

11. VENDOR AND PURCHASER (§ 44*)—CONTRACTS—FRAUD.

Evidence *held* to show that a contract for the purchase of real estate was induced by the fraudulent representations of the vendor.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 44.*]

Appeal from Municipal Court, Borough of Manhattan, Third District.

Action by the Scarsdale Publishing Company-The Colonial Press against Charles Edgerton Carter. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and DAYTON and GOFF, JJ.

L. Barton Case, for appellant.

Henry Staton, for respondent.

GOFF, J. On March 13, 1907, this form of contract was signed: "The Colonial Press * * *—Gentlemen: I hereby subscribe and agree to pay for one set of the World's Great Classics * * * on the following

terms and conditions: * * * (5) The price shall be total $738 for the set of fifteen volumes, and shall include the 12 building lots specified on the opposite page. Payable $40 monthly. * * *    Chas. Edgerton Carter.

"Received $138 cash payment.    Wm. E. Calvert, Representative.

"Make all checks payable to the Colonial Press (opposite page). In consideration of the foregoing contract and the fulfillment of its conditions under the terms specified, we agree to deliver to Charles Edgerton Carter a full covenant and warranty deed free of cost for 12 building lots, Nos. 11 to 16 and 27 to 32, 20x100 feet each, situated in block 50, at Belmont Terrace, in the town of Babylon, Long Island, as shown on the map thereof. * * * The said lots are guaranteed to be high and dry and free from all incumbrances. * * *    The Colonial Press, per Wm. E. Calvert."

Carter, the defendant, made his check for $138, payable to the order of The Colonial Press, and delivered it to the agent, Calvert. Next day the defendant, becoming "suspicious" of the transaction, stopped payment on the check. The volumes of books mentioned in the contract were delivered to defendant and subsequently returned by him. After the lapse of over a year, plaintiff commenced this action against the defendant on oral complaint for "Breach of contract; check," and the defendant answered, "General denial; fraud and misrepresentation." Two questions are presented: Did the plaintiff establish a cause of action? Did the defendant establish a valid defense of fraud?

If the action be considered as on the check, where is the evidence that the plaintiff was the owner of the check? It was made payable to "The Colonial Press" in conformity with the printed instructions, receipted for as a cash payment by "The Colonial Press," and acknowledged by letter of "The Colonial Press." Plaintiff was bound to prove that it was the payee of the check, or the lawful holder thereof by assignment or indorsement. Plaintiff's attorney, as a witness for plaintiff, said:

"I would like to testify here that the plaintiff is the owner of the check now."

But he went no farther, and his expression of what he would like to do cannot be considered evidence. Later on the attorney said:

"I ask this check be marked for identification. I want to add there that the plaintiff is the owner of paper marked 'Plaintiff's Exhibit I' for identification."

But in this he was urging as attorney, and not testifying as a witness, and the zeal of an attorney, no matter how intense, cannot be accepted as legal proof of an essential fact. Giving, however, the most liberal interpretation to plaintiff's claim, it is that the check, if not in name, was in fact made payable to the plaintiff, and therefore it became the owner. In support of this claim plaintiff's attorney, as witness, stated that the plaintiff is "a New York corporation and that the full name is the 'Scarsdale Publishing Company-The Colonial Press,' hyphenated, and that it uses a part of the name, 'The Colonial Press' in a great many contracts made by it." He further stated that there had been some years ago a New Jersey corporation, "The Colonial Press," and another corporation, the "Scarsdale Publishing Company," and that the two names were associated together in the New York incorporated title.

There can be no question but that the contract signed is one for the purchase and sale of real estate. The mere fact that it also provides for the purchase and sale of books did not detract from its real character. Indeed, that phase of it was at best but an incident, if not a mask. Reading the two pages of the contract together, it is clear that the relation of vendor and vendee was established. The vendee agreed to pay a certain sum by monthly installments for 12 building lots, and the vendor, in consideration thereof, agreed to deliver to the vendee a full-covenant and warranty deed for those lots. This, then, being a contract for the sale of land, it had to be signed by the party to be charged. Who was that party? The Colonial Press. It guaranteed against incumbrances and bound itself to deliver a warranty deed. It directed the checks to be made payable to its order, and in writing acknowledged its receipt as payment on account for the 12 lots, and it or its assignee had the sole right to maintain an action for any breach of the contract. And, conversely, the vendee could have recourse only to the vendor. If the vendee sought specific performance, whom could he sue? "The Colonial Press," or the plaintiff? Manifestly, "The Colonial Press," with whom he was in privity. If he sued the plaintiff, he might very well be met with the answer that it had not been a party to the contract, and therefore not bound.

There is not even suggestion that "The Colonial Press" assigned to plaintiff, or that it acted as its representative. The contention is that it was the plaintiff. Assuming the plaintiff to have been duly incorporated, it is, then, a purely artificial creation, having no natural or inherent power, but only such as its charter confers. People v. Ballard, 134 N. Y. 269, 32 N. E. 54, 17 L. R. A. 737. The first requisite in the certificate for incorporation is. "the name of the proposed corporation." Subdivision 1, § 2, of the Business Corporation Law (Laws 1890, p. 1168, c. 567). The name, therefore, is essential to its existence. It becomes a species of property, and will be protected as a trade-mark (State v. McGrath, 92 Mo. 355, 5 S. W. 29); and, while by its use advantages are gained, corresponding obligations must be recognized, and one of these is that in its business dealings and contracts it must use the name given to it by the law of its existence. It cannot change its name, either directly or by user; nor can the public give it a name other than that of its creation, by which it can be recognized in judicial proceedings. Matter of Mortgage Co., 83 Hun, 572, 32 N. Y. Supp. 11. Hyphenating a corporate name and amputating one-half of it is not using the corporate name. These two names, "Scarsdale Publishing Company" and "The Colonial Press," were at one time distinct entities. Their unification into one corporation existence does not warrant the use of the name of either as a substitute for the corporate name. This is not a case of misnomer, where an abbreviation was used, or a word of unnecessary description, as where "the Board of Trustees," etc., was used, instead of "the Trustees," etc. (People ex rel. v. N. Y. & Brooklyn Bridge, 1 App. Div. 186, 37 N. Y. Supp. 168); but it is one where good faith, as well as the law, required that the corporation that, as plaintiff, claimed to be the real party in interest should be the party to such an important contract as one for the sale of real estate, and that it should bear an ob-

ligation to the corresponding advantage derived. The plaintiff failed to prove any privity of contract, and the defendant's motion to dismiss should have been granted.

In view of the nature of the case, it is proper to consider the defense of fraud. It was properly interposed. On the plaintiff's own showing the action was between the original parties to the transaction. That being so, the check and the contract, as they related to the same subject-matter, should be read as one instrument. Marsh v. Dodge, 66 N. Y. 533. But the plaintiff urges that because of the seventh clause, which provides:

"That no verbal agreements affecting the validity of this contract will be recognized."

Fraud cannot be an agreement. It is an imposture, practiced by one upon another. It may be used as an inducement to enter into an agreement. Defendant does not claim that he entered into an agreement that affects the validity of the contract, but that he was induced by false representations to enter into the contract. If that be true, the validity of the contract is not assailed, but its very existence is destroyed. To constitute fraud by false representation there must be a representation of alleged existing fact, that representation must be false in fact, it must be made with intent to deceive, and the person to whom it is made must believe it. Defendant testified that plaintiff's representative—the material statements only will be referred to—told him that the lots were situated five to ten minutes' walk from the railroad station, that the lots had some improvements, and that there were cement sidewalks, gas, and water at the property, and he believed those representations. Next day defendant visited the property. He found it distant from the station a mile and a half to two miles. There were no streets, no curbing, no cement sidewalks, no water, no gas, and merely lanes made through the weeds and shrubs. In support of the defendant's testimony a witness testified that plaintiff's representative, some days after the contract was signed, met her at defendant's home, and in presence of defendant repeated the representations he had made to defendant regarding the improvements, stating that the lots he had sold defendant had those improvements, and this was done with a view to interesting her in the purchase of other lots. It was admitted by plaintiff that at the time there were no sidewalks, water, or gas on the property. The representations only were denied. This denial was made by plaintiff's representative.

Of course, we cannot judge of his appearance and manner on the witness stand. That was for the trial justice. But his language, as reproduced on the record, is before us, and that language, some of which is too vulgar for quotation, stamps him as wholly unworthy of belief. He was asked:

"Did you make any such representation that there was gas and water on the property? A. Qualifiedly. By the Court: What did you say? A. That Babylon had water, gas, and all facilities, and that this property was within Babylon."

Literally that may have been true as far as it goes; but it carried with it such a suggestion of falsehood, and was accompanied with such a suppression of the truth, that, taken in connection with the other facts, it was clearly made to convey a fraudulent purpose.

But, if any doubt remains as to where the preponderance of evidence lay on the question' of fraud, that doubt is removed by the plaintiff itself. Its methods of doing business, its combining the sale of books with the sale of building lots by installments, its dual existence by corporate names—indeed, its triple existence, for it organized, controlled, and owned another. corporation, called the "Colonial Development Company," for the purpose of selling those lots—its picture cards, maps, signs, and photographs, all tending to mislead and produce a false impression as to the contiguity of "Belmont Terrace" to highly developed and improved property, create an atmosphere of doubt and suspicion and lead to the conclusion, which, in view of the testimony and all of the surrounding circumstances,' is irresistible, that the contract was induced by false and fraudulent representations, and is therefore void.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.