OAKES FARMING ASSOCIATION, a
cooperative, Plaintiff, Appellee and
Cross-Appellant,

v.

MARTINSON BROTHERS, a partnership,
and John Martinson, Linda L. Martin-
son, Oscar Martinson and Susan M. Li-
becki, jointly and severally as individu-
als, Defendants, Appellants and Cross-
Appellees.

Civ. No. 10039.

Supreme Court of North Dakota.

April 21, 1982.

Pearson & Christensen, Grand Forks, for plaintiff, appellee and cross-appellant; argued by Douglas Christensen, Grand Forks.

Fintan L. Dooley, Bismarck, for defendants, appellants and cross-appellees.

SAND, Justice.

This is an appeal by the defendants, Martinson Brothers, a partnership, and John Martinson, Linda L. Martinson, Oscar Martinson, and Susan M. Libecki, jointly and severally as individuals [hereinafter referred to as Martinson] from a deficiency judgment in the amount of $260,017.45 and a cross-appeal by the plaintiff, Oakes Farming Association, a North Dakota cooperative [hereinafter referred to as Oakes], from that part of the judgment allowing Martinson a setoff in the amount of $79,655.00.

On 9 July 1975 Orrin and Naomi Streich [Streichs] sold certain farmland and equipment to Oakes by contract for deed [1] and by an equipment installment sales agreement.[2] A security agreement was also executed giving the Streichs a security interest in the equipment sold to Oakes "together with all repairs, improvements, accessions thereof and substitutions and replacements therefor."

On 31 December 1977 Martinson and Oakes mutually agreed that Oakes would sell and Martinson would buy "all of Oakes' tangible real and personal property, except that personal property described and set forth in Exhibit A"[3] for the total price of

1. The real property sold pursuant to this contract was valued at $1,577,902.00.

2. The equipment sold pursuant to the installment sales agreement was valued at $673,042.00 and was described as follows:

EQUIPMENT

2,000 4' x 4' pallet boxes, made of 1" oak
Fuel pumps and fuel storage facilities that holds 1200 gallons of diesel fuel and 1200 gallons of regular gas
'72 HE50 Hyster fork-lift
'74 HE50 Hyster fork-lift w/rotating head
'71 Lockwood Evenflow tub
'72 Lockwood Evenflow tubs
'71 Lockwood 32 x 144 inch grading table
'72 Lockwood 32 x 144 inch grading table
'73 FMC Processing Equip., all sizes and cartons
'70 Box filler
'72 Box filler
'73 Dock board
'73 Conveyors
'73 Milestone divider
'72 Troyer bin piler (36' high post)
'74 Troyer bulk car loader
'74 Troyer pallet box filler, w/roller
'74 Bobcat with potato bucket
'74 Bobcat with potato bucket

FIELD MACHINERY

| | | |
|---|---|---|
| '72 | 900 Versatile | 2600 hrs. |
| '74 | 1066 IHC | 715 hrs. |
| '74 | 1066 IHC | 279 hrs. |
| '74 | 1466 IHC Duals | 402 hrs. |
| '73 | John Deere 32' Cultivator | |

'73 John Deere 32' Chisel
'75 Miller 20' HD Disc
'73 John Deere 40' Land Plane
'74 7–16 IHC Plow
'73 Bulk Fertilizer Spreader
'73 Melroe Harrow
2 – 10' 620 IHC Drill
Transport for drill

POTATO EQUIPMENT

'73 Curl Potato Planter 4 x 36
'74 Curl Potato Planter 4 x 36
'75 Better Built Cutter
'72 Lilleston Cultivator 4 x 36
'74 Lilleston Cultivator 4 x 36
'73 Dahlman
'73 Dahlman
'74 Dahlman (included parts in shop)

VEHICLES

| | | |
|---|---|---|
| '73 | F65 Chev. with French box & hoist Tandem with 8,190 miles | |
| '73 | F65 Chev. with French box & hoist Tandem with 13,437 miles | |
| '73 | 700 Ford with Lockwood 16 foot | 9,450 miles |
| '73 | 700 Ford with Lockwood 16 foot | 6,680 miles |
| '74 | Ford 880 with French box & hoist Tandem with 4,220 miles | |

MISCELLANEOUS

Miscellaneous bags, cartons, and paper goods
Approximately 322 tons of granular fertilizer

3. The agreement specifically excluded from the sale certain property described in attached Ex-

$2,702,000.00. The contract did not allocate the total sales price into separate prices for the real and personal property. Most of the property sold by Oakes to Martinson had been purchased by them from the Streichs under the contract for deed and the installment sales agreement. The payment schedule set up between Martinson and Oakes provided that Martinson would make a down payment of $5,000.00 contemporaneously with the 31 December 1977 agreement, $420,000.00 within a year, and Martinson would assume Oakes' obligation under the 9 July 1975 contract for deed with Streichs[4] and the 9 July 1975 equipment installment sales contract.

Martinson took possession of the farm on 1 January 1978 and used the equipment and farmed the land during 1978. Martinson failed to make payments to Oakes in 1978 pursuant to the terms of the 31 December 1977 agreement, and, as a result, Oakes was not able to pay Streich. Streich then initiated separate actions to foreclose the contract for deed (civil 9264)[5] and to cancel the equipment installment sales contract (civil 9264–B a.k.a. 9265).[6]

Oakes brought a crossclaim in civil 9264 against Martinson Brothers and John Martinson, Linda L. Martinson, Oscar Martinson and Susan M. Libecki jointly and severally. Count I of Oakes' complaint sought judgment in the sum of $633,879.63 against Martinson for their failure to make payments pursuant to the 31 December 1977

hibit "A". The excluded property was as follows:

| | |
|---|---|
| (2) GMC Trucks | 14,000.00 |
| '64 Ford truck | 2,000.00 |
| Pump 3 horse | 300.00 |
| Lockwood Piler | 500.00 |
| Allis Chalmer mower | 300.00 |
| Box Filer | 2,000.00 |
| GMC Pickup | 300.00 |
| Snow Blower | 500.00 |
| Warehouse supplies | 28,000.00 |
| Gas & fuel, oil | 500.00 |
| Chemicals & Supplies | 5,000.00 |
| 4568 IHC Tractor | 45,000.00 |
| (4) 1850 IHC Diesel Trucks | 120,000.00 |
| J.D. Cult. 32' | 5,000.00 |
| J.D. Cult. 32' | 6,500.00 |
| IHC – 14' Drill | 6,000.00 |
| T.D. 9 IHC Cat | 1,000.00 |
| Box holder | 1,500.00 |

The agreement also listed in paragraph 6 the following personal property located on the premises but not owned by Oakes and not subject to the agreement:
A. Four 1850 Diesel trucks
B. # 4568 Four Wheel Drive Tractor
C. Personal property owned by Duane Wahz and Sy Engebretson
D. General supplies, potato bags, diesel fuel and farm chemicals

The agreement also provided in paragraph 2(c)(4) that Martinson "shall assume the obligation of Oakes under ... the Installment Sales Contract ... with the following exceptions:

.    .    .    .    .

4. The personal property herein sold by Oakes to Martinson is as follows:
   1. '75 Miller 20' HD Disc
   2. '73 JD 40' Land Plane
   3. 3 Potato Cultivators
   4. 5 Champion Potato Harvesters (2–'66, 2–'68, 1–'67)

   5. '76 Spray Coupe
   6. '75 GMC Pickup
   7. Liquid Fert. Spreader
   8. '72 Troyer Bin Piler
   9. '74 IHC 1066 Tractor
   10. '74 IHC 1066 Tractor
   11. IHC 856 Tractor
   12. IHC 856 Tractor
   13. Two new 4 row Lockwood potato planters (used one season)
   14. Six Fertilizer injection pumps
   15. Cutter (Milestone) and treater
   16. Planter Filler
   17. Standby Plant
   18. '73 700 Ford truck with Lockwood box
   19. '73 700 Ford truck with Lockwood box
   20. Chev. Fert. truck
   21. Fuel pumps and storage
   22. 14000 gal. Fertilizer storage
   23. Additional Lockwood potato box
   24. Old IHC Truck
   25. All shop and warehouse contents as of date hereof
   26. IHC 806 Tractor with loader

4. The agreement also provided that Martinson was to assume Oakes' obligation under a 17 May 1976 contract for deed with Leo E. Spitzer and Alice Spitzer. That obligation is not at issue in this appeal.

5. The action to foreclose the contract for deed was brought against Oakes, Martinson, Agsco Distributors, Inc., First National Bank of Oakes, Silas O. Engebretson, Rossford Johnson, Orian Fjestad, Larry D. Sieg, and John Martinson, individually. These claims will be discussed only as they are relevant to the instant appeal.

6. The action to cancel the equipment installment sales contract was brought against

agreement. Count II of Oakes' complaint alleged in substance that Martinson failed to make installment payments due under the Streich-Oakes equipment contract and as a result Martinson owed Oakes the sum of $434,642.00. Count III sought to foreclose and cancel any interest of Martinson in the real property involved. Count III also provided that by virtue of Martinson's default Oakes retained the right in a separate action to request a deficiency judgment against Martinson for the costs of the action and for all amounts due under the agreement which exceeded the fair value of the subject property.

Martinson answered Oakes' crossclaim and asserted various claims against Oakes which alleged in substance that Oakes had removed certain personal property from the premises which was included in the 31 December 1977 agreement.[7] However, no defense was raised by Martinson as to the nonseverability of the real and personal property in the 31 December 1977 agreement.

On 26 March 1979, the day set for trial of civil No. 9264, the parties entered a stipulation in open court to the entry of judgment. Pursuant to the oral stipulation the district court, the Honorable Larry M. Hatch, entered findings of fact, conclusions of law, and order for judgment dated 26 March 1979. A judgment dated the same day was also entered which, in substance, canceled the contract for deed between Streich and Oakes, subject to Oakes' right to cure the default on or before 1 December 1979. The judgment also provided that the 31 December 1977 contract between Oakes and Martinson, insofar as it affected the conveyance of real estate, was terminated and canceled subject to Martinson's right to cure the default on or before 1 April 1979; that Martinson Brothers were indebted to Oakes in the amount of $434,642.00 which represented the agreed purchase price of the personal property described in the 31 December 1977 contract;[8] that Martinson was to deliver the personal property, including any replacement units, to Oakes on or before 15 April 1979; that Oakes had the continuing right to pursue by appropriate procedures a deficiency judgment against Martinson either or both arising out of the purchase price plus interest of the real property or arising out of the agreed purchase price plus interest of the personal property described in the 31 December 1977 contract; that Martinson's affirmative defenses against Oakes were dismissed;[9] that if Oakes received a deficiency judgment against Martinson, Martinson would receive a $90,000.00 credit for statutory exemptions on the judgment; that should Streich conduct a sheriff's sale pursuant to their security agreement with Oakes, the net proceeds derived from the sheriff's sale credited toward Streichs' judgment against Oakes would be credited toward Oakes' judgment against Martinson, and that if there was no

Oakes, Silas O. Engebretson, Rossford Johnson, Orian Fjestad, and Larry D. Sieg.

7. The portion of the answer relevant to the appeal provides as follows:

"The agreement of December 31st, 1977, represented to Third Party Defendants [Martinson] that the contents in the warehouse on the date that it was shown to John Martinson on November 15th, 1977, were all included in the sale of the personal property to Third Party Defendants. When Third Party Defendants took over on December 31st, a number of these items had been removed such as the 10 head Baker bagging machine (used value $14,000), two head Northwest bagging machine (used value $2,500), L belt (used value $1,000), accumulating table (used value $2,000), New Jersey wire tying machine (used value $100), Hemer sewing machine, dry fertilizer spreader and other

machinery and equipment of a total value of $25,000.00"

8. The findings of fact in civil 9264 reflect that the parties stipulated that the real estate sold in the 31 December 1977 agreement was being sold for the total principal price of $2,267,358.00. The findings of fact also reflect that the personal property sold in the same agreement was being sold for the total purchase price of $434,642.00.

9. The findings of fact in civil 9264 reflect that the affirmative defenses of Martinson set forth in the third-party defendants' answer to Oakes' third-party complaint were dismissed with prejudice. However, the conclusions of law as well as the judgment reflect that these affirmative defenses were dismissed and the words "with prejudice" were not included in these documents.

sheriff's sale, then there would be credited toward Oakes' judgment against Martinson the amount of credit given Oakes by Streich for the value of the personal property and equipment.

Martinson delivered the personal property to Oakes as required by the judgment in civil 9264, and on 6 August 1979 Streich held a sheriff's sale and sold the various items of farm machinery and warehouse equipment.[10] As a result of the sheriff's sale, personal property and equipment owned by Oakes were sold for the net sum of $87,502.59. A partial satisfaction of Streichs' judgment against Oakes was entered in civil 9264 in the amount of $87,-502.59, and a corresponding credit was given to Martinson in Oakes' judgment against Martinson.

After the sheriff's sale, Oakes brought two actions for deficiency judgments against Martinson. These actions were civil 9395 concerning the real property[11] and civil 9396 concerning the personal property. Oakes' complaint in civil No. 9396 alleged in substance that a judgment in the amount of $434,642.00 representing the value of the personal property was entered against Martinson on 26 March 1979; that a sheriff's sale of certain personal property in conjunction with a levy on the execution issued on the judgment was held on 6 August 1979, and as a result of that sale approximately $88,000.00 was obtained; that pursuant to the judgment entered in civil 9264 the net proceeds of the sheriff's sale and the sum of $90,000.00[12] were to be credited against the sum of $482,866.40[13] plus the interest at the legal rate from 26 March 1979, leaving a balance due and owing to Oakes of approximately $316,938.05.

Martinson's answer in civil action 9396 (personal property) asserted that they were entitled to credit on the judgment for certain personal property because it was neither delivered to them nor sold at the sheriff's execution sale. Martinson also alleged as an affirmative defense that the personal property and real property in the 31 December 1977 agreement were sold for a total consideration of $2,702,000.00 and the amount was not severable into specific amounts for the personal property and real property.

A bench trial was held in civil 9396. The district court issued findings of fact, conclusions of law, and order for judgment which held that Oakes was entitled to a deficiency judgment of $339,672.45, less an additional (setoff) credit of $79,655.00, for a total deficiency judgment of $260,017.45, with interest at the legal rate from 18 December 1980. Judgment was entered on 24 March 1980 and thereafter Martinson appealed and Oakes cross-appealed.

The first issue we will consider concerns the severability of the total purchase price of the 31 December 1977 agreement between Oakes and Martinson, and the 26 March 1979 stipulation and subsequent judgment which allocated $434,642.00 of that price for personal property, and $2,267,358.00 for real property. Interrelated with this issue are the doctrines of collateral attack and res judicata.

The original contract between Oakes and Martinson did not allocate values for the real and personal property; however, the findings of fact in civil 9264 provide, in part, as follows:

10. The sheriff's sale also included replacement equipment by virtue of an "after-acquired property clause" in the 7 July 1975 equipment installment sales contract.

11. Martinson moved for summary judgment in civil 9395 (real property) and asserted they were entitled to a judgment as a matter of law because the land was never sold and because Oakes did not comply with the provisions of NDCC § 32–19–06. The district court, the Honorable Robert Eckert, granted Martinsons' motion. No appeal was taken from that dismissal.

12. This represents the amount of exemptions due to Martinson and was agreed to in the stipulation in civil 9264.

13. This amount represents Oakes' judgment against Martinson for personal property ($434,-642.00 plus interest from 31 December 1977 to 26 March 1979.

"VIII.

". . . By agreement of the parties the real estate described in said contract was being sold for the total principal price of $2,267,358.00. The personal property as therein described was by agreement being sold for the total purchase price of $434,642.00."

"XIII.

"That the entire unpaid balance of the principal purchase price in regard to the real estate described in said contract in the sum of $2,262,358.00 (being the agreed purchase price for said real estate less the $5,000.00 paid at the time of the execution of the contract) plus interest on said sum to March 26, 1979 is unpaid."

"XIV.

"The entire sum of $434,642.00, representing the agreed purchase price of the personal property described in said contract of December 31, 1977, plus interest on said amount to March 26, 1979, is unpaid."

The conclusions of law and the judgment included the following identical language:

"That the defendants Martinson Brothers, a partnership and John Martinson, Linda L. Martinson, Oscar Martinson and Susan M. Libecki, jointly and severally as individuals are indebted to Oakes Farming Association in the sum of $434,642.00, plus interest on said amount to and through March 26, 1979. Said amount represents the agreed purchase price plus interest thereon of the personal property described in the contract of December 31, 1977. The defendants Martinson Brothers, a partnership and John Martinson, Linda L. Martinson, Oscar Martinson and Susan M. Libecki, jointly and severally as individuals, shall assemble said personal property, including any replacement units thereof and deliver same to Oakes Farm-

ing Association on or before April 15, 1979."

The record reflects that counsel for Streich, Martinson, and Oakes each participated in preparing the findings of fact, conclusions of law, and judgment in civil 9264. The respective counsel were also present and participated at the time the oral stipulation was recited to the court.

In the instant action (civil 9396), Martinson's answer alleged in substance an affirmative defense that the personal and real property described in the 31 December 1977 agreement were sold for a total consideration of $2,702,000.00 and were not severable; and because they were not severable and no value could be attributed to the real property, there was no way of determining a deficiency as to the personal property. The district court granted Oakes' motion to strike the above-described affirmative defense.

Martinson asserts that the 31 December 1977 contract was not severable into separate values for real and personal property, and the fact that the sale of real estate also provides for the sale of personal property does not destroy the contract's character as a contract for the purchase of realty. See McKee v. Kinev, 160 N.W.2d 97 (N.D. 1968).[14] Therefore, Martinson asserts the instant action was for a deficiency judgment involving a contract for realty and because the provisions of North Dakota Century Code § 32–19–06 were not followed, there could be no deficiency judgment. See, First State Bank of Cooperstown v. Ihringer, 217 N.W.2d 857 (N.D. 1974).

Oakes asserts that the question of severability was not raised in Martinson's third-party answer in civil 9264 and because no appeal was taken from the judgment based upon the parties' stipulation, the judgment, including the severance of the $434,642.00 allocated to the personal property was agreed to by Martinson and is final.

14. In McKee v. Kinev, 160 N.W.2d 97, 100 (N.D.1968) we said:
"The fact that a contract for the sale of real estate also provides for the sale of personal property does not destroy its character as a

contract for the purchase of realty. 91 C.J.S. Vendor & Purchaser § 1, p. 830; Scarsdale Pub. Co.-Colonial Press v. Carter, 63 Misc. 271, 116 N.Y.S. 731 (1909)."

Recently, in *Morris v. Richland County Board of Drain Commissioners*, 313 N.W.2d 763, 765–766 (N.D.1981), we said:

"In *Larimore East View Development, Inc. v. City of Larimore*, 275 N.W.2d 309, 314 (N.D.1979), we said: 'We have consistently recognized that issues litigated in a previous action between the same parties are conclusively settled by that judgment, and may not be litigated in a subsequent action between the same parties, regardless of the form the issue may take in the subsequent action.' The fact that the prior action in *Larimore* was not terminated by a stipulation for dismissal with prejudice does not distinguish *Larimore* from the situation here. In *Rugby Milling Co. v. Logosz*, 261 N.W.2d 662, 664 (N.D.1977), we said: 'No distinction is made between judgments entered after stipulation by the parties and judgments entered after trial unless fraud is involved in the former.' In *Rugby Milling*, we quoted from *Harchenko v. Harchenko*, 77 N.D. 289, 43 N.W.2d 200 (1950), Syllabus ¶ 1:

'A judgment, entered pursuant to the stipulation of the parties to an action, is as effective an adjudication of the issues in the case as one entered upon an actual trial of such issues.'

The decision in *Rugby Milling* prevents issues raised in a prior action, which was terminated by a stipulation to dismiss with prejudice, from being relitigated in a later action."

■ A stipulation which is not in defiance of the law and is not a fraud on the court is conclusive upon the parties, at least until they are properly relieved from the terms of the stipulation. *Bjerken v. Ames Sand & Gravel Co., Inc.*, 206 N.W.2d 884 (N.D.1973).

We have also said that a judgment applies to any defenses to an action which have been raised and which could have been raised by the exercise of due diligence. *Hospital Services, Inc. v. Brackey*, 283 N.W.2d 174 (N.D.1979); *Robertson Lumber Co. v. Progressive Contractors, Inc.*, 160 N.W.2d 61 (N.D.1968); see also 50 C.J.S. *Judgments* § 682.

With these concepts firmly in mind, we must examine some general propositions relative to the severability of contracts.

■ Whether or not a contract is severable depends primarily on the intention of the parties as determined from the terms of the contract. *Soderstrom v. White*, 68 N.D. 293, 279 N.W. 306 (1938) 117 A.L.R. 391; *King v. Whatley*, 236 S.W.2d 186 (Tex.Civ. App.1951); *Baker v. Jones*, 69 Wyo. 314, 240 P.2d 1165 (1952). The subject matter of the contract together with other facts and circumstances relating to the contract, including the conduct of the parties, must be considered along with whether or not there was an apportionment of the consideration between real and personal property. *Soderstrom v. White, supra.*

■ In this instance the 31 December 1977 contract between Oakes and Martinson originally may not have been severable; however, we believe the earlier set out portions of the findings of fact and judgment in civil 9264 reflect that the parties, by stipulated agreement, severed the contract into separate agreements for personal property and for real property. Neither does the record reflect any fraudulent activity in the procurement of the stipulation. As far as the record before us reflects, no motions were made to reopen the judgment entered pursuant to stipulation in civil 9264. As such, we believe the judgment in civil 9264 is final and Martinson is precluded from relitigating or raising the question of severability for the first time in the instant action.

An interrelated issue raised by Martinson is that the trial court erred in striking the affirmative defenses raised in their answer to civil 9396. In conjunction with this issue, Martinson asserts that the stipulation which resulted in the judgment in civil 9264 was contractual in nature and the rules for interpretation of a contract, including rescission, apply. Martinson asserts that the judgment in civil 9264 can be rescinded by reason of material breach of the stipulation and judgment which it asserts is reflected by the amount of setoff allowed by Judge Eckert in the instant action. Martinson

also asserts that there is a breach of conditions, a lack of specificity, a misconstruction and lack of consent of the provisions of the judgment in civil 9264 which justify refusal to apply the principle of res judicata.

The record before us reflects that no postjudgment motions in civil 9264 were made to set aside or modify the judgment entered. Martinson did not move to set aside the judgment because of the nonseverability of the 31 December 1977 agreement, the alleged fraud or collusion of Oakes and Streichs in other proceedings, the alleged breach of conditions upon which the stipulation for judgment was entered, the alleged lack of specificity in the agreement, the alleged mistake of fact justifying rescission, or any other factor which may have justified relief from the judgment. However, Martinson has raised these points in the instant action which in effect amounts to a collateral attack.

■ A judgment may not be collaterally attacked by a party to the action in whose name it is entered or by one in privity with a party to the judgment. *Hull v. Rolfsrud,* 65 N.W.2d 94 (N.D.1954). An exception to this rule is that a judgment may be collaterally attacked if the court lacks jurisdiction to enter the judgment and the lack of jurisdiction is obvious from the record. *Texaco Oil Co. v. Mosser,* 299 N.W.2d 191 (N.D.1980); *Lende v. Wiedmeier,* 179 N.W.2d 736 (N.D.1970). In *Farrington v. Swenson,* 210 N.W.2d 82, 84 (N.D.1973) we noted:

"Generally, a judgment is not subject in a collateral proceeding to all exceptions that might be taken to it on direct attack. 46 Am.Jur.2d Judgments, Sec. 541, p. 797. The presumptions of law in favor of the validity of judgments rendered by courts of competent jurisdiction, and the conclusions of such presumptions, are particularly applicable in a collateral proceeding. The mere fact that a judgment is voidable does not render it subject to collateral attack. A judgment may be attacked only by direct action, and by taking the proper steps to have it set aside or modified by direct attack in the proceedings in which it was rendered. Rule 60, N.D.R.Civ.P. Some courts have held that a judgment may not be collaterally attacked except for lack of jurisdiction of the court which rendered it. *Austin v. Austin,* 173 Mich. 47, 138 N.W. 237 (1912)."

■ In this instance Martinson has not challenged the court's jurisdiction in civil 9264. Rather, Martinson has raised several questions which should have been resolved by postjudgment motion instead of by collateral attack in the instant proceeding. Accordingly, we believe the doctrines of collateral attack and res judicata preclude Martinson from raising these questions in the instant action.

Furthermore, we also believe that several of the allegations of misconduct were dealt with by Judge Eckert in his findings of facts in civil 9396 which provided, in part, as follows:

"XX

"That prior to the Sheriff's sale on August 6th, 1979 the four tractors sold to Martinson by Oakes, namely the two IHC 1974 Model 1066's and one IHC 1974 Model 856 tractor and the one IHC Model 860 [*sic* 806] tractor with farmhand loader were transferred by Oakes Farming Association after Martinsons' rights to the same had expired (on or after April 16th, 1979) as Rossford Johnson president of Oakes Farming Association traded the two 1066 tractors and one 856 tractor to Cline's Implement of Oakes for a Model 4568 tractor. That this trade was made by Oakes as testified by Johnson so that there would be a 'big tractor' at the Sheriff's auction to serve as a draw for potential bidders.

"XXI

"That under the 1975 Oakes-Streich purchase agreement Oakes had purchased from Streich four tractors, namely a 1972 9,000 Versatile, two 1974 1066 tractors and one 1974 1446 IHC with duals.

"That during 1975 and 1976 Oakes traded the 9,000 Versatile and the 1466 IHC tractor to Rossford Johnson Potato

Co. for the aforementioned two 856 tractors and the one 856 [*sic* 806] IHC tractor with farmhand loader, which were later sold to Martinson under the December 31st, 1977 agreement. That the reason for the trade of tractors as explained by Mr. Johnson was because the 9,000 Versatile and the 1466 with duals did not work well as a row crop tractors used in the potato planting operation.

### "XXII

"The court finds that the reasons for the trades as explained by Johnson constituted valid business reasons and the court finds nothing wrong with the transfer and trades of the tractors as aforementioned."

These findings, in part, dispel several of the allegations raised by Martinson concerning misconduct on the part of Oakes, and pursuant to Rule 52(a), North Dakota Rules of Civil Procedure, are not clearly erroneous.

The last issue we will discuss relates to Oakes' cross-appeal. Oakes asserts that the trial court improperly allowed a setoff of $79,655.00 to Martinson on the judgment.

The resolution of this issue requires us to initially look at the terms of the judgment entered in civil 9264. The judgment in civil 9264 as it related to setoffs provided as follows:

"IT IS FURTHER ADJUDGED, DETERMINED AND DECREED: That in the event there is a sale of the personal property and equipment by plaintiffs [Streichs] pursuant to their security agreement, the net proceeds derived from the sale of such as credit toward the plaintiffs' judgment against Oakes Farming Association shall be credit toward the judgment defendant Oakes Farming Association has against defendant Martinson Brothers. Should there be no sale of said personal property and equipment by the plaintiffs then and in that event, there shall be credited towards the judgment of defendant Oakes Farming Association against Martinson Brothers the credit given Oakes Farming Association by the plaintiffs for the value of the personal property and equipment."

The record reflects that this provision was the product of an exchange of letters among the respective counsel for Streich, Martinson and Oakes. In particular, a letter from counsel for Martinson provides as follows:

"A new paragraph should be added to paragraph XXXV. This can be inserted just prior to the 'Conclusions of Law' and you will only have to redo one page. Findings of Fact No. 35 should read as follows:

"In the event there is a sale of the equipment by Plaintiffs pursuant to their Security Agreement, the proceeds derived from the sale of such equipment shall be credited towards the Judgment the Defendant Oakes Farming Association has against the Defendant Martinson Brothers. Should there be no sale of said equipment, then and in that event, there shall be credited towards the Judgment of Defendant Oakes Farming Association against Martinson Brothers the value placed upon the machinery at the time it was sold by Defendant Oakes Farming Association to Defendant Martinson Brothers."

The language was eventually changed to that reflected in the judgment.

The record also reflects the following dialogue from the transcript of the parties' stipulation in open court:

"Mr. Christensen: As far as the total judgment of Oakes Farming Association has taken against Martinson Brothers, et al, in the event there is a sale of the equipment by Orrin and Naomi Streich pursuant to their security agreement, the proceeds derived from the sale of that equipment shall be credited towards the Judgment Oakes Farms has against Martinson Brothers.

"Mr. Hjellum: And if there is no sale, then the credit will be that value placed upon the machinery at the time it was sold by Oakes Farming Association to Martinsons.

"Mr. Christensen: The sale or the credit giving towards the machinery by Streich against Oakes, that will be applied towards the judgment.

"Mr. Hjellum: Fine."

█ We believe the language as reflected in the judgment in civil 9264, the transcript of the parties' stipulation, and the exchange of letters among counsel on this matter contemplates that Martinson would receive credit or a setoff for only the personal property which they in fact purchased from Oakes pursuant to the 31 December 1977 agreement. We believe it would be inconsistent with the judgment in 9264 to allow Martinson a setoff for property which they did not purchase from Oakes.

Based on this conclusion, we must examine the terms of the 31 December 1977 agreement to determine, if possible, what property was purchased by Martinson.

Martinson's amended answer in the instant action alleged in substance that they purchased *all* of Oakes' tangible personal property except that set forth in Exhibit "A" (see footnote 3) and that certain items of the personal property they purchased from Oakes were not sold at the sheriff's execution sale. These items as listed in the amended answer with values assigned by Martinson are as follows:

| | |
|---|---|
| "Fuel tank and pump . . . . . . . | $ 150.00 |
| Melroe Harrow . . . . . . . . . . . . | 1,800.00 |
| New IHC–620 model Drill . . . . | 6,500.00 |
| IHC 1974 tractor # 1066 . . . . . | 17,500.00 |
| IHC 1974 tractor . . . . . . . . . . . | 17,500.00 |
| IHC 1974 tractor # 856 . . . . . . | 8,500.00 |
| 402 IHC combine . . . . . . . . . . . | 7,500.00 |
| 4–1850 Diesel IHC potato trucks . . . . . . . . . . . . . . . . . . | 125,000.00 |
| WD9 [*sic* TD9] IHC tractor . . . . | 1,500.00 |
| FMC Potato boxing equipment | 50,000.00 |
| Baker potato bagger . . . . . . . . . | 15,000.00 |
| Two head Northwestern potato bagger . . . . . . . . . . . . . . . . . . | 2,500.00 |
| L belt, Hamer bag closer, New Jersey wire tie and Tri-state boiler [*sic* baler] . . . . . . . . . . . | 4,000.00 |
| Warehouse equipment sold to Defendants under said agreement, but moved out by Plaintiff before possession delivered to Defendants, the value of which will be established at the trial . . . . . | 34,000.00 |
| IHC tractor # 806, Serial No. 3857 and farm hand loader . . | 10,000.00 |
| | $293,000.00" |

Because Martinson asserted they purchased the above listed property from Oakes and because the property was allegedly not sold at the sheriff's sale, Martinson contended that pursuant to the terms of the judgment in civil 9264 they were entitled to a credit or setoff for this personal property.

Oakes contended that Martinson only purchased the property specifically described in paragraph 2(c)(4) of the 31 December 1977 agreement (see footnote 3), and further that paragraph 6 and exhibit "A" of the agreement specifically excluded various items of personal property from that purchased by Martinson.

The district court concluded that a conflict existed between paragraph 2(c)(4) which specifically included certain property purchased by Martinson from Oakes and paragraph I which provided that Martinson purchased "all of Oakes tangible . . . personal property except that personal property described and set forth in Exhibit 'A'." The district court concluded in its conclusions of law that a conflict existed between paragraphs I and 2(c)(4) and that paragraph 2(c)(4) should be given effect because it was intended to eliminate disputes as to property purchased by Martinson.

██ The construction of a written contract is a question of law for the court to decide. *Hager v. Devils Lake Public School District,* 301 N.W.2d 630 (N.D.1981); *Park View Manor, Inc. v. Housing Authority of County of Stutsman,* 300 N.W.2d 218 (N.D. 1980). On appeal to this court conclusions of law are fully reviewable. *Hager v. Devils Lake Public School District, supra.*

█ In interpreting a contract, the contract must be read and construed in its entirety so that all of the provisions are taken into consideration to determine the true intent of the parties. *Gift v. Ehrichs,* 284 N.W.2d 435 (N.D.1979); *St. Paul Fire & Marine Insurance Co. v. Amerada Hess Corp.,* 275 N.W.2d 304 (N.D.1979); NDCC § 9–07–06.

█ The intention of the parties to a written contract must, if possible, be ascertained from the writing alone. *Wall-*

*work Lease & Rental Co., Inc. v. JNJ Investments, Inc.*, 303 N.W.2d 545 (N.D.1981); *Olson v. Peterson*, 288 N.W.2d 294 (N.D. 1980); NDCC § 9–07–04.

If a contract is ambiguous in any respect, it is proper in construing its terms to look to the circumstances under which it was executed and matters to which it relates. *Stuart v. Secrest*, 170 N.W.2d 878 (N.D. 1969).

Whether or not a contract is ambiguous is a question of law. *Thiel Industries, Inc. v. Western Fire Insurance Co.*, 289 N.W.2d 786 (N.D.1980).

If the parties' intention in a written contract can be ascertained from the writing alone, then the interpretation of the contract is a question of law for the court to decide; if, however, the parties' intention cannot be determined from the writing alone and reference must be made to extrinsic evidence, then those questions in regard to which extrinsic evidence is adduced are questions of fact to be determined by the trier of fact. *Park View Manor, Inc. v. Housing Authority of County of Stutsman, supra; Metcalf v. Security International Insurance Co.*, 261 N.W.2d 795 (N.D.1978); *Van Ornum v. Otter Tail Power Co.*, 210 N.W.2d 188 (N.D.1973); *Stetson v. Investors Oil, Inc.*, 140 N.W.2d 349 (N.D.1966). In this instance we note the trial court made the following conclusion of law:

## "II

"The court concludes that as to the conflict existing between Paragraph I and Paragraph 2(c)(4) of the Sales Agreement dated December 31st, 1977 between Martinson and Oakes that Paragraph 2(c)(4) specifically enumerates the property to be purchased and that said paragraph was intended to eliminate any disputes as to what was to be purchased by Martinson and therefore should be given effect."

We must keep in mind that whether a particular determination is a finding of fact or a conclusion of law is to be determined by the reviewing court and labels placed upon findings by the trial court are not conclusive. *Ferguson v. Ferguson*, 202 N.W.2d 760 (N.D.1972).

We believe the above set out conclusion of law II is a mixture of law and fact.

The conclusion of law in effect recites that the provisions of the contract are conflicting or ambiguous. A perusal of the contract and in particular paragraphs I, 2(c)(4), (6), and exhibit "A" reflects that the contract is, at best, confusing or ambiguous as to what was actually purchased by Martinson. Based on this, we agree with the district court's conclusion which, in effect, determined that the contract was ambiguous. Based on this ambiguity, extrinsic evidence was presented to determine the intention of the parties as to what was purchased by Martinson. After hearing such evidence, the trial court found that paragraph 2(c)(4) was intended to eliminate any disputes as to what was to be purchased by Martinson and, therefore, should be given effect. Our review of the record before us reflects that this finding as to the intention of the parties is not clearly erroneous pursuant to Rule 52(a), N.D.R.Civ.P.

In support of this finding is the proposition that a contract which is ambiguous and not clear should be construed most strongly against the party who caused the uncertainty to exist, which in this instance was Martinson. *Grove v. Charbonneau Buick-Pontiac, Inc.*, 240 N.W.2d 853 (N.D. 1976); *Farmers Elevator Co. v. David*, 234 N.W.2d 26 (N.D.1975); NDCC § 9–07–19. Further support for this proposition is found in our rules of construction that if a conflict exists between a specific provision and a general provision in a contract, the specific provision qualifies the general provision. *Matter of Estate of Gustafson*, 287 N.W.2d 700 (N.D.1980).

Based on this, we conclude that Martinson should be entitled to setoffs for only those items listed in paragraph 2(c)(4) of the 31 December 1977 agreement.

Notwithstanding this conclusion, we note that exhibit "A" specifically ex-

cludes $28,000.00 worth of "warehouse supplies" from the 31 December 1977 agreement and paragraph 2(c)(4)(25) specifically includes "all shop and warehouse contents" in the 31 December 1977 agreement. We believe the proper interpretation of these conflicting paragraphs is that Martinson was purchasing from Oakes the itemized farming equipment listed in paragraph 2(c)(4) and was also purchasing the "warehouse equipment" as reflected by paragraph 2(c)(4)(25). However, we do not believe that Martinson purchased "warehouse supplies" as reflected by exhibit "C". In this respect we note that "supplies" are defined in Webster's New World Dictionary, (2d College Ed. 1980), as "an amount or quantity available for use; stock; store" and the same source defines "equipment" as "goods used in providing service."

With these definitions and our previous conclusion as to what was purchased by Martinson in mind, we will examine the setoffs allowed by the district court.

The district court allowed Martinson the following setoffs:

| | |
|---|---|
| Melroe harrow | $  1,400.00 |
| 7–16 IHC plow | 6,055.00 |
| Two IHC 620 10′ press drills | 12,000.00 |
| 1973 Chevrolet truck with french potato box and hoist | 18,000.00 |
| 1973 (or 1974?) Chevrolet truck with french potato box and hoist | 18,000.00 |
| 1974 Ford 880 truck | 20,000.00 |
| IHC 620 model drill 14′ | 4,200.00 |
| | $79,655.00 |

■ A perusal of paragraph 2(c)(4) reflects that none of these items are listed in that paragraph. Furthermore, we believe that these items all represent farming equipment which, if it had been purchased by Martinson, would have been specifically listed in paragraph 2(c)(4) and would not have come within the category of "all shop and warehouse contents." Accordingly, we believe the district court erred in allowing a setoff in the amount of $79,655.00.

■ We do note that Martinson sought a setoff for four tractors which were included in paragraph 2(c)(4) and which were not sold at the sheriff's sale. These four tractors were two IHC # 1066 tractors, an IHC # 856 tractor and an IHC # 806 trac-

tor. The district court did not allow a setoff for these tractors because it found that they were traded in for a larger tractor (a 4568) for a valid business purpose in that Oakes reasonably believed that the larger tractor would enhance the entire sheriff's sale and that more money would be received for one larger tractor than for the smaller tractors. As we have previously stated, the district court's finding that this transfer was for a valid business purpose was not clearly erroneous. Accordingly, we agree with the district court that no setoff should have been allowed for these tractors.

We also note that Martinson asserted that they were entitled to a setoff for the following: FMC potato bagger, L belt, Hamer bag closer, New Jersey wire tie, Tri-state baler, and other warehouse equipment. The district court concluded that whether or not these items were included in "shop and warehouse contents" was raised in Martinson's third-party answer, civil 9264, and was litigated in that action. (See footnote 7.) We agree.

We further note that Martinson's amended answer sought a setoff for a fuel tank and pump which they claimed had a value of $150.00. The district court did not allow a setoff for this item. We believe this item is included in paragraph 2(c)(4)(21) and accordingly a setoff should have been allowed for this item. Because of the confusing nature of items of property and the difficulty of tracing these items, we believe that it would not be in the interest of judicial economy to remand the case for a finding of fact as to the value of the fuel tank and pump and we will allow a setoff in the amount claimed by Martinson, $150.00.

In conclusion, we modify the district court judgment to allow Martinson a setoff of $150.00, but not the amount of $79,655.00, and the judgment, as so modified, is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.